# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CITIZENS AGAINST dONALD TRUMP, )
INC., )
          )
    Plaintiff, )
          )
vs.          )    Case No. 4:25-CV-311
          )
DONALD J. TRUMP, *in his official* )
*capacity as President of the United States of* )
*America,* )
          )
and )
          )
ELON MUSK, *in his official capacity as* )
*Agency Head[1] of the Department of* )
*Government Efficiency, an advisory* )
*committee subject to the Federal Advisory* )
*Committee Act,* )
          )
and )
          )
THE DEPARTMENT OF GOVERNMENT )
EFFICIENCY, *an advisory committee* )
*subject to the Federal Advisory Committee* )
*Act,* )
          )
and )
          )
RUSSELL VOUGHT, *in his official* )
*capacity as Director of the Office of* )
*Management and Budget,* )
          )
and )
          )
THE OFFICE OF MANAGEMENT AND )
BUDGET, )
          )
and )

---

[1] As defined in Section 2(b) of Defendant Trump's Executive Order No. 14210 "Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative": ""Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director..."" *See* Exec. Order No. 14210; 2025-02762 (90 Fed. Reg. 9669).

DOUG COLLINS, *in his official*                    )
*capacity as Acting Director of the United*        )
*States Office of Government Ethics*,              )
                                                   )
and                                                )
                                                   )
UNITED STATES OFFICE OF                            )
GOVERNMENT ETHICS,                                 )
                                                   )
            Defendants.                            )

## PLAINTIFF'S COMPLAINT

## FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND WRIT OF MANDAMUS

COMES NOW Plaintiff Citizens Against donald Trump, Inc. (hereinafter "Plaintiff CAT"), by and through their attorneys, and for their Complaint against Defendant Donald J. Trump ("Defendant Trump"), in his official capacity as the President of the United States of America, Defendant Elon Musk ("Defendant Musk"), in his official capacity as Agency Head of the Department of Government Efficiency, Defendant Department of Government Efficiency ("Defendant DOGE"), Defendant Russell Vought ("Defendant Vought"), in his official capacity as the Director of the Office of Management and Budget, Defendant Office of Management and Budget ("Defendant OMB"), Defendant Doug Collins ("Defendant Collins"), in his official capacity as the Acting Director of the United States Office of Government Ethics and Defendant United States Office of Government Ethics ("Defendant OGE") and respectfully states to this Honorable Court the following:

1.     Plaintiff Citizens Against donald Trump, Inc. is a nonpartisan nonprofit corporation registered with the State of Missouri, where it resides and holds its principal place of business.

2

2.      Plaintiff Citizens Against donald Trump, Inc.'s members consist of nonpartisan citizen members across the United States, including but not limited to, Constitutional legal scholars, Constitutional lawyers and nonlawyers.

3.      Plaintiff Citizens Against donald Trump, Inc. is formed to protect our United States Constitution and laws of our country from unconstitutional or illegal acts by Defendant Trump, Defendant Trump's Cabinet members, the Departments under Defendant Trump and Defendant Trump's associate's implementing or executing governmental action.

4.      Plaintiff CAT, which represents a wide range of citizens of the United States of America, challenge the creation and operation of the so-called Department of Government Efficiency ("DOGE") under the Federal Advisory Committee Act ("FACA").

5.      Plaintiff CAT also challenges the designation of Defendant Musk as a special Government employee of Defendant DOGE, as declared by Defendant Trump and the White House as Defendant Musk has worked and held himself out in public as the "Agency Head" (the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director, unless otherwise specified in this order) of Defendant DOGE as defined in Section 2(b) of Executive Order 14210 signed on February 11, 2025 and published on February 14, 2025 (*See* ¶ 27, *infra*), which contradicts the definition of a special Government employee under federal law as set forth in 18 U.S.C. § 202.

6.      Plaintiff CAT also challenges Defendant Collins, as Acting Director of OGE, and the OGE for failing to establish the framework for the public financial disclosure systems for the executive branch employees of Defendant DOGE; primarily in permitting Defendant Musk to be declared as a special Government employee which allows Defendant Musk to avoid full financial disclosures as any other government employee and acts in conspiracy with Defendant Trump and

Defendant Musk in shielding Defendant Musk's financial disclosures from the general public, Plaintiff CAT and all other citizens of this United States.

7.      Plaintiff CAT also challenges Defendant Vought, as Director of Defendant OMB, and Defendant OMB because Defendant Vought and Defendant OMB are a part of Defendant DOGE as ordered by Defendant Trump in his original Executive Order regarding DOGE, Executive Order No. 14158; Additionally, Defendant Vought and Defendant OMB's participation in Defendant DOGE's illegal actions as evidenced in Defendant Trump's successive 2nd and 3rd Executive Orders, No. 14210 signed on February 11, 2025 and No. 14219 signed on February 11, 2025. *See* Exec. Order No. 14158; 2025-02005 (90 Fed. Reg. 8441); Exec. Order No. 14210; 2025-02762 (90 Fed. Reg. 9669); Exec. Order No. 14219; 2025-03138 (90 Fed. Reg. 10583).

8.      Plaintiff CAT and those they represent believe that the government should work for the American people and be transparent, efficient, and effective.

9.      Like all Americans, Plaintiff CAT, and those they represent. count on the federal government for a wide range of services and programs, from, including but not limited to, protecting our national and domestic security, to responding to national emergencies and crises, to ensuring our roads and transportation are safe, to caring for our veterans, to supporting life-saving healthcare research and programs, to supporting our nation's schools and universities, to lending to small businesses and entrepreneurs, to ensuring safe workplaces, to protecting our individual rights and enforcing our laws; These services depend on an efficient, effective, and transparent federal government.

10.     The Defendant, "Department" of Government Efficiency, is not a federal department; Elected representatives in Congress have not established nor have they funded such an enterprise; Defendant DOGE is, instead, a shadow operation led by unelected billionaires who

stand to reap huge financial rewards from this influence and access; Despite these conflicts of interest, Defendant DOGE is slated to dictate federal policy in ways that will affect millions of Americans, including those communities that Plaintiff CAT represents; It is doing so under a shroud of secrecy with none of the transparency, oversight, or opportunity for public participation the law requires.

11.    Defendant DOGE's unchecked secrecy, access, and private influence—bought by political loyalty—is anathema to efficient, effective government; Indeed, any federally endorsed, but fundamentally private, advisory effort to shape how our government serves the American people must comply with federal transparency laws, including FACA; Defendants have not done so.

12.    Defendant Trump established Defendant DOGE to work with Defendant OMB through "embedded appointees" at various federal agencies to develop recommendations on how to "dismantle," "slash," and "restructure" those agencies' programs[2]; Defendant DOGE recommendations have already and will "pave the way" for the Trump-Vance Administration to make drastic cuts to federal programs and services impacting our national security as well as the lives and livelihoods of millions of Americans.[3]

13.    Defendant Trump previously tapped two private individuals and campaign donors, Defendant Musk and Vivek Ramaswamy ("Ramaswamy"), to lead Defendant DOGE's work,[4] supported by an identified team of private individuals with ties to Defendant Musk and Ramaswamy or to Defendant Trump's first Administration[5]; Defendant DOGE began operating as

---

[2] *See* Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET),
https://truthsocial.com/@realDonaldTrump/posts/113472884874740859 (last visited Mar. 5, 2025).
[3] *Id.*
[4] *Id.*
[5] Ken Thomas et al., *Inside the Early Days of DOGE*, Wall St. J. (Jan. 17, 2025),
https://www.wsj.com/politics/policy/doge-federal-reform-musk-ramaswamy-118a3833 (last visited Mar. 7, 2025).

an advisory committee even before Defendant Trump took office by "sending representatives to agencies across the federal government... to begin preliminary interviews" with agency officials, including officials at "the Treasury Department, the Internal Revenue Service and the departments of Homeland Security, Veterans Affairs, and Health and Human Services."[6]

14.    The same day Defendant Trump took the office of the presidency on January 20, 2025, he issued Executive Order No. 14158: "Establishing and Implementing the President's "Department of Government Efficiency".[7]

15.    Despite its ongoing operations, Defendants have taken none of the required steps necessary to properly establish Defendant DOGE as a federal advisory committee consistent with FACA.

16.    Defendant DOGE is also ill-suited to lawfully carry out its sweeping mandate because it does not have a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." *See* 5 U.S.C. § 1004(b)(2); The experiences of Big Tech and pharmaceutical industry billionaires are not wholly representative of the experiences or interests of the American people; Defendant DOGE excludes the perspectives of people with the greatest stake in the services and programs it will recommend eliminating; Instead, its advice and recommendations will reflect only the perspectives of industry titans, who have made clear their desire to be free from the regulations they propose to slash.

17.    These significant conflicts of interest are playing out in secret, contrary to FACA's transparency requirements; Of particular note, Defendant DOGE's members communicate using

---

[6] Faiz Siddiqui et al., *DOGE is Dispatching Agents Across U.S. Government*, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-doge-federal-agencies/ (last visited Mar. 7, 2025).
[7] *See* Exec. Order No. 14158; 2025-02005 (90 Fed. Reg. 8441).

the ephemeral messaging application Signal[8]; which is widely used for its auto-delete functionality[9]; Defendant DOGE's use of Signal threatens to irreparably deprive Plaintiff CAT and the American public of records to which they are entitled under FACA.

18.     Plaintiff CAT therefore respectfully seeks relief from this Honorable Court in the form of an Immediate Temporary Order enjoining Defendant DOGE from continuing its work until it is brought in compliance with FACA, including its obligation to make its records available for inspection by the public, and barring Defendants from accepting or acting upon any advice or recommendations made by Defendant DOGE while it is acting outside the law.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331[10] because this action arises under FACA, 5 U.S.C. § 1001 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

20.     The Court further has jurisdiction pursuant to 28 U.S.C. § 1361 as this statute specifically sets forth the following:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

*See* 28 U.S.C. § 1361.

21.     On October 5, 1962, Congress enacted 28 U.S.C. § 1361 giving the power to the people to stop government corruption and abuse; on this date, Public Law 87-748 was enacted and codified as follows:

---

[8] Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (Jan. 13, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html (last visited Mar. 6, 2025).
[9] *Set and Manage Disappearing Messages*, Signal Support, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (last visited Mar. 6, 2025).
[10] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"AN ACT
To amend chapter 85 of title 28· of the- ~United States Code relating to the jurisdiction
of the United States district courts, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of
America in Congress Assembled*, That chapter 85 of title 28 of the United States
Code is amended—

(a) By adding at the end thereof the following new section:

**"§ 1361. Action to compel an officer of the United States to
perform his duty**

"The district courts shall have original jurisdiction of any action in the nature of
mandamus to compel an officer or employee of the United States or any agency
thereof to perform a duty owed to the plaintiff.""

*See* Pub. L. 87–748, § 1(a), Oct. 5, 1962, 76 Stat. 744.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(C), which

provides in pertinent part:

"A civil action in which a defendant is an officer or employee of the United States
or any agency thereof acting in his official capacity or under color of legal authority,
or an agency of the United States, or the United States, may, except as otherwise
provided by law, be brought in any judicial district in which (A) a defendant in the
action resides, (B) a substantial part of the events or omissions giving rise to the
claim occurred, or a substantial part of property that is the subject of the action is
situated, or (C) *the plaintiff resides if no real property is involved in the action*."
(*emphasis added*).

*See* 28 U.S.C. § 1391(e)(1)(C)[11].

23.    Also on October 5, 1962, Congress amended the venue section of Title 28, 28

U.S.C. § 1391, in enacting Public Law 87-748 by adding the section Plaintiff relies on above,

---

[11] This venue statute is written in the disjunctive as to the requirements of the civil action and as to which judicial
district the civil action may be brought: (1) "a defendant is an officer or employee of the United States or any agency
thereof acting in his official capacity or under color of legal authority," or" (2) "a defendant is an agency of the
United States, or the United States"; further stating in the disjunctive that such a civil action "may...be brought in
any judicial district in which" (A) "a defendant in the action resides" (B) "a substantial part of the events or
omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is
situated" or (C) "the plaintiff resides if no real property is involved in the action". (*emphasis added*).
In this civil action, a defendant is an officer or employee of the United States or any agency thereof acting in his
official capacity or under color of legal authority [*Russell Vought*] and a defendant is an agency of the United States
[*Office of Management and Budget*] and the plaintiff resides in this Eastern District of Missouri and no real property
is involved in the action [*Plaintiff CAT resides in the State of Missouri, City of St. Louis, in the federal jurisdiction
of the United States District Court of the Eastern District of Missouri and no real property is involved in this
action*].

making venue appropriate where the plaintiff resides and if no real property is involved in the action:

> "AN ACT
>
> To amend chapter 85 of title 28· of the- ~United States Code relating to the jurisdiction of the United States district courts, and for other purposes.
>
> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled*, That chapter 85 of title 28 of the United States Code is amended—
> ...
> Sec. 2. Section 1391 of title 28 of the United States Code is amended by adding at the end thereof the following new subsection:
> "(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as other\vise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) *the plaintiff resides if no real property is involved in the action*." (*emphasis added*).

*See* Pub. L. 87–748, § 2, Oct. 5, 1962, 76 Stat. 744.

24.    Congress' modifications made in Public Law 87-748 on October 5, 1962 could clearly be defined as the "accountability" modifications.

25.    Although 62 years ago Congress could not have possible predicted the unconstitutional and illegal actions of Defendant Trump and the other Defendants named in this action, Congress' modifications made in Public Law 87-748 on October 5, 1962 were made for this situation of the acts of Defendants more fully described herein.

## PARTIES

26.    Plaintiff Citizens Against donald Trump, Inc. ("CAT") is a nonpartisan nonprofit corporation registered with the State of Missouri and resides in St. Louis, Missouri in this Eastern District of Missouri.

27.    Plaintiff CAT is a tax-exempt corporation 26 U.S.C. § 501(c)(3) (application pending final approval) with a set Board of Directors and non-voting members.

28.     Plaintiff CAT's corporate purpose is: To create a non-partisan membership of citizens of the United Stated States of America who believe in the United States Constitution, the Amendments to the United States Constitution, the ideals and intentions of the Framers of our United States Constitution and/or who fear the United States Constitution is threatened by President Trump; To enforce the ideals and intentions of the Framers of our United States Constitution, who realized that a bicameral legislature at the national level would foster a more representative central government given the shortcomings of the government created by the Articles of Confederation; To enforce the ideals and intentions of the Framers of our United States Constitution who had hoped to create a system in which power is shared and in which there are checks and balances of power to prevent corruption or tyranny by designing a two-chamber United States Congress ("[Then] president-elect [Trump] has demanded Senate Republicans allow his picks to skirt the confirmation process should they face resistance in the Senate — an extraordinary blow to the country's system of checks and balances should his party members oblige him." *See* "A running list of all the people Trump has picked to serve in his administration", https://www.yahoo.com/news/running-list-people-trump-picked-225003460.html?fr=sycsrp_catchall, November 30, 2024); To enforce the goal of the Framers of our United States Constitution to design a form of government that would keep one person or group of people from having too much power, or unchecked power; To protect the citizens of the United Stated States of America from future Executive Orders by President Trump that violate the United States Constitution, any Amendments to the United States Constitution or Federal Law by pursuing litigation (including any appeals up to and including the Supreme Court of the United States) in any State, with respect to any such Executive Order; To protect the citizens of the United Stated States of America from future Actions by President Trump that violate the United States

Constitution, any Amendments to the United States Constitution or Federal Law by pursuing litigation (including any appeals up to and including the Supreme Court of the United States) in any State, and are not subject to official immunity as defined by the Supreme Court of the United States in *Trump v. United States*, 603 U.S. 593, 144 S. Ct. 2312, 219 L. Ed. 2d 991 (2024) and in *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S. Ct. 2690, 73 L. Ed. 2d 349 (1982); To protect the citizens of the United Stated States of America from President Trump committing Treason, Bribery, other high crimes, misdemeanors (offenses against the government, grave abuses of power, violations of the public trust, or other political crimes, even if not indictable criminal offenses) or violating the United States Constitution, any Amendments to the United States Constitution or Federal Law during his presidency, who was certified as President-elect on January 6, 2025, and inaugurated on January 20, 2025, and the House of Representatives of the 119th United States Congress, holding a Republican majority with 220 seats while the Democrat party holds 214 seats, with California's 13th U.S. House District yet to finish counting votes and declare the winner of the November 5, 2024 election at the time of the filing of these Articles of Incorporation, fail to institute impeachment proceedings against President Trump by pursuing litigation (including any appeals up to and including the Supreme Court of the United States) in any State, as President Trump stated he would not be a dictator "except for Day 1" and publicly wrote: "Do you throw the Presidential Election Results of 2020 OUT and declare the RIGHTFUL WINNER, or do you have a NEW ELECTION? A Massive Fraud of this type and magnitude allows for the termination of all rules, regulations, and articles, even those found in the Constitution" in that the Framers did not anticipate a citizen (President Trump) stating he would be a dictator for a day or articles of the Constitution should be terminated and that citizen (President Trump) becoming President and the House of Representatives (controlled by the same party as President Trump) fail to impeach

President Trump (Article One, Section 2, Clause 5 of the United States Constitution) and uphold their oath when taking office:

> "I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter: So help me God";

and To protect the citizens of the United Stated States of America from future Actions by President Trump's Cabinet members and other appointees, including, but not limited to, the Vice President, the Secretary of Agriculture, the Secretary of Commerce, the Secretary of Defense, the Secretary of Education, the Secretary of Energy, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Secretary of Housing and Urban Development, the Secretary of Interior, the Secretary of Labor, the Secretary of State, the Secretary of Transportation, the Secretary of Treasury, the Secretary of Veterans Affairs, the Attorney General, the White House Chief of Staff, the U.S. Ambassador to the United Nations, the Director of National Intelligence, the Director of the Federal Bureau of Investigation, the U.S. Trade Representative, the Administrator of the Environmental Protection Agency, the Director of the Office of Management and Budget, the Chairperson of the Council of Economic Advisers, the Director of the Office of Science and Technology Policy, the Administrator of the Small Business Administration, the Administrator of the Centers for Medicare & Medicaid Services, and the Head of the newly created "Department of Government Efficiency", created by President Trump, that violate the United States Constitution, any Amendments to the United States Constitution or Federal Law by pursuing litigation (including any appeals up to and including the Supreme Court of the United States) in any State.

29.    Because of the secrecy of Defendant Musk's position with Defendant DOGE as Defendant Trump and The White House has declared Defendant Musk a special Government

employee, Defendant Musk is being sued in his official capacity as Agency Head of Defendant DOGE.

30.    Defendant Collins is being sued in his official capacity as Acting Defendant OGE.

31.    Defendant OGE an "independent agency" within the executive branch of the U.S. Federal Government is responsible for directing executive branch policies relating to the prevention of conflicts of interest on the part of Federal executive branch officers and employees.

32.    Although Defendant OGE is considered an "independent agency" it is within the executive branch and the Director is appointed by the President.

(a)    On November 19, 2024, the Senate confirmed David Huitema as Director of the U.S. Office of Government Ethics (OGE); Mr. Huitema was nominated by President Biden over a year before he was confirmed[12];

(b)    On February 10, 2025, Defendant Trump removed David Huitema as Director of the U.S. Office of Government Ethics (OGE)[13];

(c)    On the same evening of the day Defendant Trump removed David Huitema as Director of the U.S. Office of Government Ethics (OGE), Defendant Trump signed a document making Defendant Collins, a Republican former member of Congress and then current Department of Veterans Affairs secretary, the Acting Director of OGE.[14]

---

[12] *Senate Confirms Director of Office of Government Ethics*, Fed Manager (November 19, 2024) https://www.fedmanager.com/news/senate-confirms-director-of-office-of-government-ethics (last visited Mar. 7, 2025).
[13] Myah Ward, *Trump removes Government Ethics Office director*, Politico (February 10, 2025) https://www.politico.com/news/2025/02/10/trump-removes-government-ethics-office-director-00203418 (last visited Mar. 7, 2025).
[14] Kathryn Watson, *Trump ousts director of Office of Government Ethics*, CBS News (February 10, 2025) https://www.cbsnews.com/news/trump-office-of-government-ethics-director/ (last visited Mar. 7, 2025).

33.     Defendant OMB is a federal agency within the meaning of FACA, 5 U.S.C. § 1001(3), and the APA, 5 U.S.C. § 551(1), that is headquartered in the District of Columbia; As the federal agency Defendant Trump assigned to work with Defendant DOGE, Defendant OMB has a nondiscretionary duty to ensure that Defendant DOGE complies with FACA.

34.     Defendant Vought is being sued in his official capacity as Director of OMB; As the Director of OMB, the Director has a nondiscretionary duty to ensure that Defendant DOGE complies with FACA.

35.     Defendant DOGE is a de facto advisory committee within the meaning of FACA, 5 U.S.C. § 1001(2)(A), that is headquartered in the District of Columbia.

36.     Defendant DOGE was formed by Executive Order No. 14158, entitled, "**Establishing and Implementing the President's "Department of Government Efficiency**", signed on January 20, 2025 and published on January 29, 2025, which stated in pertinent part:

> "Section 1.  Purpose.  This Executive Order establishes the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity.
>
> Sec. 2.  Definitions.  As used in this order:
> (a)  "Agency" has the meaning given to it in section 551 of title 5, United States Code, except that such term does not include the Executive Office of the President or any components thereof.
> (b)  "Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director, unless otherwise specified in this order.
> ...
> Sec. 4.  Modernizing Federal Technology and Software to Maximize Efficiency and Productivity.
> ...
> (b)  Agency Heads shall take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems.  USDS shall adhere to rigorous data protection standards.
> (c)  This Executive Order displaces all prior executive orders and regulations, insofar as they are subject to direct presidential amendment, that might serve as a

14

barrier to providing USDS access to agency records and systems as described above."

*See* Exec. Order No. 14158; 2025-02005 (90 Fed. Reg. 8441). (*See also* Plaintiff's Exhibit 1 *attached hereto*).

37.    Defendant Trump then issued Executive Order No. 14210, a *second* executive order regarding Defendant DOGE entitled, "**Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative**", signed on February 11, 2025 and published on February 14, 2025, which stated:

"Section 1.  Purpose.  To restore accountability to the American public, this order commences a critical transformation of the Federal bureaucracy.  By eliminating waste, bloat, and insularity, my Administration will empower American families, workers, taxpayers, and our system of Government itself.

Sec. 2.  Definitions.  (a)  "Agency" has the meaning given to it in section 3502 of title 44, United States Code, except that such term does not include the Executive Office of the President or any components thereof.
(b)  "Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director, unless otherwise specified in this order.
(c)  "DOGE Team Lead" means the leader of the Department of Government Efficiency (DOGE) Team at each agency, as defined in Executive Order 14158 of January 20, 2025 (Establishing and Implementing the President's "Department of Government Efficiency").
(d)  "Employee" has the meaning given to it by section 2105 of title 5, United States Code, and includes individuals who serve in the executive branch and who qualify as employees under that section for any purpose.
...
Sec. 3.    Reforming the Federal Workforce to Maximize Efficiency and Productivity.  (a)  Hiring Ratio.  Pursuant to the Presidential Memorandum of January 20, 2025 (Hiring Freeze), the Director of the Office of Management and Budget shall submit a plan to reduce the size of the Federal Government's workforce through efficiency improvements and attrition (Plan).  The Plan shall require that each agency hire no more than one employee for every four employees that depart, consistent with the plan and any applicable exemptions and details provided for in the Plan.  This order does not affect the standing freeze on hiring as applied to the Internal Revenue Service.  This ratio shall not apply to functions related to public safety, immigration enforcement, or law enforcement.  Agency Heads shall also adhere to the Federal Hiring Plan that will be promulgated pursuant

15

to Executive Order 14170 of January 20, 2025 (Reforming the Federal Hiring
Process and Restoring Merit to Government Service).
...
   (c)  Reductions in Force.  Agency Heads shall promptly undertake preparations
to initiate large-scale reductions in force (RIFs), consistent with applicable law, and
to separate from Federal service temporary employees and reemployed annuitants
working in areas that will likely be subject to the RIFs.  All offices that perform
functions not mandated by statute or other law shall be prioritized in the RIFs,
including all agency diversity, equity, and inclusion initiatives; all agency
initiatives, components, or operations that my Administration suspends or closes;
and all components and employees performing functions not mandated by statute
or other law who are not typically designated as essential during a lapse in
appropriations as provided in the Agency Contingency Plans on the Office of
Management and Budget website.  This subsection shall not apply to functions
related to public safety, immigration enforcement, or law enforcement."

*See* Exec. Order No. 14210; 2025-02762 (90 Fed. Reg. 9669). (*See also* Plaintiff's Exhibit 2

*attached hereto*).

38.    Defendant Trump then issued Executive Order No. 14219, a *third* executive order

regarding Defendant DOGE entitled, "**Ensuring Lawful Governance and Implementing the**

**President's "Department of Government Efficiency" Deregulatory Initiative**", signed on

February 19, 2025 and published on February 25, 2025, which stated:

"Section 1 . Purpose. It is the policy of my Administration to focus the executive
branch's limited enforcement resources on regulations squarely authorized by
constitutional Federal statutes, and to commence the deconstruction of the
overbearing and burdensome administrative state. Ending Federal overreach and
restoring the constitutional separation of powers is a priority of my Administration.

Sec. 2 . Rescinding Unlawful Regulations and Regulations That Undermine the
National Interest.
...
Sec. 3 . Enforcement Discretion to Ensure Lawful Governance.
...
(b) Agency heads shall determine whether ongoing enforcement of any regulations
identified in their regulatory review is compliant with law and Administration
policy. To preserve resources and ensure lawful enforcement, agency heads, in
consultation with the Director of the Office of Management and Budget, shall, on
a case-by-case basis and as appropriate and consistent with applicable law, then
direct the termination of all such enforcement proceedings that do not comply with
the Constitution, laws, or Administration policy.

...
Sec. 5 . Implementation. The Director of the Office of Management and Budget shall issue implementation guidance, as appropriate.

Sec. 6 . Definitions. (a) "Agency" has the meaning given to it in 44 U.S.C. 3502, except it does not include the Executive Office of the President or its components.
(b) "Agency head" shall mean the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director.
(c) "DOGE Team Lead" shall mean the leader of the DOGE Team at each agency as described in Executive Order 14158 of January 20, 2025 (Establishing and Implementing the President's "Department of Government Efficiency").
(d) "Enforcement action" means all attempts, civil or criminal, by any agency to deprive a private party of life, liberty, or property, or in any way affect a private party's rights or obligations, regardless of the label the agency has historically placed on the action.
(e) "Regulation" shall have the meaning given to "regulatory action" in section 3(e) of Executive Order 12866, and also includes any "guidance document" as defined in Executive Order 13422 of January 18, 2007 (Further Amendment to Executive Order 12866 on Regulatory Planning and Review).
(f) "Senior appointee" means an individual appointed by the President, or performing the functions and duties of an office that requires appointment by the President, or a non-career member of the Senior Executive Service (or equivalent agency system).
..."

 *See* Exec. Order No. 14219; 2025-03138 (90 Fed. Reg. 10583). (*See also* Plaintiff's Exhibit 3 *attached hereto*).

## LEGAL BACKGROUND

### I.    The Federal Advisory Committee Act

39.    Congress enacted FACA in 1972 as a "sunshine law" to curb the Executive Branch's reliance on superfluous and secretive "advisory committees": ad hoc, non-federal bodies that counsel governmental decisionmakers on federal policy; Congress was particularly concerned that advisory committees "were often dominated by representatives of industry and other special interests seeking to advance their own agendas." *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999) (citing H.R. Rep. No. 92-1017 (1972), reprinted in 1972 U.S.C.C.A.N. 3491, 3496).

40.     To address those concerns, FACA establishes strict requirements for the creation and conduct of such committees that are designed to "promote transparency, accountability, and open public participation in executive branch decisions and prevent informal advisory committees from exerting improper or one-sided influence." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1101 (D.C. Cir. 2021).

41.     FACA defines an "advisory committee" as a "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . that is established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government[.]" *See* 5 U.S.C. § 1001(2)(A).

42.     An advisory committee subject to FACA can be "(i) established by statute or reorganization plan; (ii) established or utilized by the President; or (iii) established or utilized by one or more agencies." *Id.*

43.     An advisory committee is established if it is "created by the federal government" and it is utilized if it is "subject to the federal government's 'actual management or control,' even if it is not created by the government." *VoteVets Action Fund*, 992 F.3d at 1103–04 (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994)).

44.     Consistent with FACA's goal of limiting the number of advisory committees "to the minimum necessary", a new advisory committee may be established only if: (1) it is "specifically authorized by statute or by the President"; or (2) the head of an agency "determine[s] as a matter of formal record," after consulting with the Administrator of the General Services Administration ("GSA") and publishing "timely notice . . . in the Federal Register," that its creation

is "in the public interest in connection with the performance of duties imposed on that agency by law," *See* 5 U.S.C. § 1002(b)(2) and 5 U.S.C. § 1008(a).

45.     Relatedly, FACA further requires that, before establishing a new advisory committee, "the President, agency heads, or other Federal officials determine...whether the functions of the proposed advisory committee are being or could be performed by one or more agencies or by an advisory committee already in existence...by enlarging the mandate of an existing advisory committee" or through some "other means such as a public hearing or other methods of public engagement," *See* 5 U.S.C. §§ 1004(b)-(c) and 41 C.F.R. § 102-3.60(b)(2).

46.     Any advisory committee must also have, among other requirements, (i) "a clearly defined purpose"; (ii) a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee"; and (iii) "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." *See* 5 U.S.C. §§ 1004(b)(1)-(3).

47.     The agency must also create a Membership Balance Plan ("MBP"), which must describe "the agency's plan to attain fairly balanced membership," as well as "the agency's conclusions regarding the points of view that would promote fairly balanced committee membership." *See* 41 C.F.R. § 102-3.60(b)(3).

48.     FACA's implementing regulations specifically provide that, in thinking about the range of viewpoints that ought to be represented, agencies must "fully consider and understand the potential implications or anticipated impacts of the advisory committee's potential recommendations."; That will necessarily require "consideration of the groups and entities potentially affected or interested in such recommendations...so that the agency can make informed

decisions on the areas of expertise or perspectives (including relevant lived experience) that would advance the work of the advisory committee." *See* 41 C.F.R. § 102-3.60(b)(3)(i).

49.    Agencies must then "conduct broad outreach, using a variety of means and methods, to ensure that the call for nominees reaches the interested parties and stakeholder groups likely to possess those points of view." *See* 41 C.F.R. § 102-3.60(b)(3)(ii).

50.    Once these predicate findings are made, the advisory committee is still prohibited from "meet[ing] or tak[ing] any action until an advisory committee charter has been filed" with the GSA Administrator, if the committee will advise the President, or "the head of the agency to whom the advisory committee reports" and the relevant Senate and House committees, if the committee will advise an agency. *See* 5 U.S.C. § 1008(c).

51.    The charter must contain the following information:

    (a)    the committee's official designation;

    (b)    the committee's objectives and the scope of its activity;

    (c)    the period of time necessary for the committee to carry out its purposes;

    (d)    the agency or official to whom the committee reports;

    (e)    the agency responsible for providing the necessary support for the committee;

    (f)    a description of the duties for which the committee is responsible, and, if the duties are not solely advisory, a specification of the authority for the duties;

    (g)    the estimated annual operating costs for the committee in dollars and person-years;

    (h)    the estimated number and frequency of committee meetings;

      (i)     the committee's termination date, if less than 2 years from the date of the committee's establishment; and

      (j)     the date the charter is filed.

*See* 5 U.S.C. § 1008(c)(2).

52.     Once in operation, advisory committees must facilitate public comment and participation by keeping their meetings "open to the public" and providing "timely notice of each meeting" through the Federal Register, which GSA has interpreted to mean "at least 15 calendar days" notice, unless less notice is justified by documented and "exceptional circumstances," *See* 5 U.S.C. §§ 1009(a)(1)-(2) and 41 C.F.R. § 102-3.150.

53.     Within reason, interested members of the public must "be permitted to attend, appear before, or file statements with any advisory committee." *See* 5 U.S.C. § 1009(a)(3).

54.     In addition, FACA requires disclosure of "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for" the committee, subject to the exemptions of FOIA; To meet this obligation, affirmative publication of committee records is required. ("[A]gencies may not require members of the public or other interested parties to file requests for non-exempt advisory committee records."). *See* 5 U.S.C. § 1009(b) and 41 C.F.R. § 102-3.170.

55.     These materials must be released well before the relevant advisory committee meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Hum. Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992); *see also* 41 C.F.R. § 102-3.170 (requiring "contemporaneous availability of advisory committee records").

56.     FACA requires that "[d]etailed minutes of each meeting," containing specified information, "of each meeting of each advisory committee shall be kept." *See* 5 U.S.C. § 1009(c).

57.     Finally, FACA's transparency obligations extend to a subcommittee or working group of an advisory committee, which must also open its meetings and provide all records to the public if it "makes recommendations directly to a Federal officer or agency, or if its recommendations will be adopted by the parent advisory committee without further deliberations by the parent advisory committee." *See* 41 C.F.R. § 102-3.145.

## II.     The Administrative Procedure Act

58.     The APA permits judicial review by persons "suffering legal wrong because of agency action, or adversely aggrieved by agency action"; Under the APA, a "reviewing court...shall compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be...arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. §§ 702, 703-704, 706(1) and 706(2).

## III.     Mandamus - 28 U.S.C. § 1361

59.     Where a plaintiff can "demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists...[t]he district courts shall have original jurisdiction" to compel performance of the duty by issuing a writ of mandamus, 28 U.S.C. § 1361. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) *see also* 28 U.S.C. § 1361.

## IV.     Special Government Employee - 18 U.S.C. § 202

60.     Defendant Trump has declared that he has hired Defendant Musk, Head of Defendant DOGE, as a special Government employee (SGE).

61.     The hiring process and requirement of completing a confidential financial disclosure form or the filing of public financial disclosure forms are significant different requirements between a SGE and regular federal employees.

62.     Defendant Trump designating Defendant Musk a SGE will prevent the American people from seeing Defendant Musk's financial disclosure forms, which will conceal any and all potential conflicts of Defendant Musk and his activities with Defendant DOGE.

## FACTS

**A.     Defendant Trump established Defendant DOGE and its membership to work with Defendant OMB and develop recommendations and advice for Defendant OMB and other federal agencies.**

63.     On November 12, 2024, Defendant Trump announced the creation of Defendant DOGE and stated "that the Great Elon Musk, working in conjunction with American Patriot Vivek Ramaswamy," would lead the effort.[15]

64.     In establishing Defendant DOGE, Defendant Trump made clear that it would not be a formal part of the government, despite its governmental-sounding name; Instead, Defendant DOGE was created to "provide advice and guidance from outside of Government" to "the White House and Office of Management & Budget," recommendations that Defendant Trump said he expects will "pave the way" for the Trump-Vance Administration to "dismantle," "slash," and "restructure" federal programs and services.[16]

65.     Defendant DOGE is operating publicly as a government affiliated entity, holding itself out on X as a "government or multilateral organization."[17]

---

[15] See Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859 (last visited Mar. 6, 2025).
[16] *Id*.
[17] *See* Department of Government Efficiency (@DOGE), X, https://x.com/doge?lang=en (last visited Mar. 4, 2025); see also *About Grey Checkmark*, X, https://help.x.com/en/using-x/grey-checkmark ("The grey checkmark is for governments and multilateral organizations.") (last visited Mar. 6, 2025).

66.    Defendant Trump appointed Defendant Musk and Vivek Ramaswamy, two private citizens and billionaire campaign donors, to lead DOGE's work.[18]

67.    Defendant Musk is among the wealthiest people in the world with an estimated current net worth of $358 Billion[19] and holds key roles and financial interests in, among other ventures, Founder, CEO, and chief engineer of *SpaceX*, Founder of *the Boring Company*, Founder of *X Corp.*, Founder of *xAI*, CEO and product architect of *Tesla*, Owner, CTO and executive chairman of X (f/k/a *Twitter*), Co-founder of *Neuralink*, Co-founder of *OpenAI*, Co-founder of *Zip2*, and Co-founder of *X.com* (part of *PayPal*).[20]

68.    Ramaswamy made his fortune in the pharmaceutical industry and, more recently, founded an investment firm with interests in oil and gas investments and cryptocurrency.[21]

69.    Defendant Trump subsequently assigned William (Bill) McGinley, a lawyer and lobbyist aligned with the Republican Party who was originally slated to serve as his White House Counsel, "to serve as Counsel to [DOGE]."[22]

70.    Defendant Trump also appointed Katie Miller ("Miller") to Defendant DOGE. Miller served as a spokesperson for the Trump-Vance transition team and, previously, held multiple senior communications positions during Defendant Trump's first term.

---

[18] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.
[19] Celebrity Net Worth, *Elon Musk Net Worth $358 Billion* (Last updated: February 26, 2025) https://www.celebritynetworth.com/richest-businessmen/ceos/elon-musk-net-worth/ (last visited Mar. 6, 2025).
[20] Wikipedia, *Elon Musk* (Last edited March 6, 2025 at 17:14 (UTC)) https://en.wikipedia.org/wiki/Elon_Musk (last visited Mar. 6, 2025).
[21] Jessica Piper, *How Vivek Ramaswamy Made a Fortune Before Pivoting to Politics*, Politico (May 14, 2023), https://www.politico.com/news/2023/05/14/how-vivek-ramaswamy-made-money-00096046 (last visited Mar. 6, 2025).
[22] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 4, 2024, 12:50 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113595819146944245.

71.    In addition to Mr. McGinley and Miller, Defendant Musk and Ramaswamy were to lead a team that includes Steve Davis and Brad Smith,[23] who will help coordinate the work of various Defendant DOGE volunteers.[24]

72.    Steve Davis, for more than 20 years has helped Defendant Musk cut costs at the businesses owned by Defendant Musk and Steve Davis also serves as the President at the company owned by Defendant Musk, *the Boring Company*.[25] Steve Davis is also known to be leading "[t]he day-to-day operations of DOGE."[26]

73.    Brad Smith, a healthcare executive who served in Defendant Trump's first administration, has acted as a chief of staff to Defendant DOGE.[27]

74.    Defendant Musk and Ramaswamy, consistent with their assignment at the time from Defendant Trump, stated that they intended for Defendant DOGE to provide advice and recommendations on "three major kinds of reform: regulatory rescissions, administrative reductions and cost savings."[28]

75.    Defendant Musk and Ramaswamy also confirmed that Defendant DOGE will work with "embedded appointees" at various federal agencies to develop its recommendations for "reform"[29]; The "reform" they had in mind would carry a hefty price tag for the American people,

---

[23] Theodore Schleifer & Noah Weiland, *Musk Cost-Cutting Effort Is Being Guided by Health Entrepreneur*, N.Y. Times (Dec. 6, 2024), https://www.nytimes.com/2024/12/06/us/politics/elon-musk-doge-brad-smith-trump.html (last visited Mar. 4, 2025).
[24] Cat Zakrzewski & Jacqueline Alemany, *Elon Musk Isn't the Only Tech Leader Helping Shape the Trump Administration*, Wash. Post (Jan. 13, 2025), https://www.washingtonpost.com/politics/2025/01/13/andreessen-tech-industry-trump-administration-doge/ (last visited Mar. 4, 2025) (describing Marc Andreessen's involvement with DOGE as an "an unpaid volunteer").
[25] Sarah McBride, *Who is Steve Davis? Elon Musk's go-to cost-cutter is working for DOGE*, Los Angeles Times (December 27, 2024) https://www.latimes.com/business/story/2024-12-27/who-is-steve-davis-elon-musks-go-to-cost-cutter-is-working-for-doge (last visited Mar. 6, 2025).
[26] *Thomas, et al.*, n. 4, *supra*.
[27] *Id.*
[28] *See* Elon Musk & Vivek Ramaswamy, *The DOGE Plan to Reform Government*, Wall. St. J. (Nov. 20, 2024), https://www.wsj.com/opinion/musk-and-ramaswamy-the-doge-plan-to-reform-government-supreme-court-guidance-end-executive-power-grab-fa51c020 (last visited Mar. 4, 2025).
[29] *Id.*

as Defendant Musk and Ramaswamy had set a goal of slashing between $500 billion and $2 trillion in federal spending.

76.    Defendant DOGE had already begun its operations before Defendant Trump took office of the presidency on January 20, 2025 and entered his first Executive Order regarding Defendant DOGE, as multiple news organizations reported, by "sending representatives to agencies across the federal government...to begin preliminary interviews" with agency officials, including officials at "the Treasury Department, the Internal Revenue Service and the departments of Homeland Security, Veterans Affairs, and Health and Human Services."[30]

77.    On information and belief, Defendant DOGE expected to receive classified information from the Trump-Vance Administration (and on information and belief, this is true) and has sought out office space in Washington, DC "where [Mr.] Musk and DOGE staffers could review" such sensitive government material.[31]

78.    On information and belief, Defendant DOGE was to be assigned office space for its use on the White House campus at the Eisenhower Executive Office Building and at Defendant OMB[32].

79.    On information and belief, Defendant OMB exercises management and control over Defendant DOGE's operations.

80.    On January 20, 2025, on the day Defendant Trump was sworn is President, Ramaswamy abruptly quit working with Defendant Musk and Defendant DOGE.[33]

---

[30] *Siddiqui*, et al., n. 5, *supra*.
[31] *Thomas*, et al., n. 4, *supra*.
[32] *Id*.; *Schleifer & Ngo*, n. 6, *supra*.
[33] Paul Steinhauser, *Ramaswamy done at DOGE; source says Ohio gubernatorial campaign launch expected early next week*, Fox News (Jan. 20, 2025, https://www.foxnews.com/politics/ramaswamy-done-doge-ohio-gubernatorial-campaign-launch-expected-early-next-week-sources (last visited Mar. 5, 2025).

**B.    Defendant DOGE has been providing advice and recommendations on dismantling, slashing, and restructuring federal programs and services and has been terminating government employees on its own.**

81.    Defendant Trump established Defendant DOGE to develop recommendations on how to "dismantle," "slash," and "restructure" those agencies' programs[34]; It is now working with Defendant OMB toward that end and, together with Defendant OMB, will "mak[e] recommendations to Congress and Defendant Trump's administration on ways to bring down spending and cut regulations."[35]

82.    When considering Defendant Trump's nomination of Defendant Vought for Defendant OMB Director, U.S. Senator Rand Paul, Chairman of the Senate Homeland Security and Governmental Affairs Committee, observed that one of the Defendant OMB Director's primary responsibilities will be to "collaborate with" Defendant DOGE.[36]

83.    Defendant Musk and Ramaswamy were to have said that Defendant DOGE "will focus particularly on driving change through executive action" that the Trump-Vance Administration can take unilaterally at their urging[37]; That includes, in their view, recommendations for defunding federal programs and services through the impoundment of lawfully appropriated federal funds.[38]

---

[34] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 12, 2024, 7:46 PM ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859 (last visited Mar. 4, 2025).

[35] *Thomas*, et al., n. 4, *supra*.

[36] Press Release, U.S. Senate Comm. on Homeland Sec. & Governmental Affs., Dr. Paul Delivers Opening Remarks at Hearing on Nomination of Russell Vought to be Director of the Office of Management and Budget (Jan. 15, 2025), https://www.hsgac.senate.gov/media/reps/dr-paul-delivers-opening-remarks-at-hearing-on-nomination-of-russell-vought-to-be-director-of-the-office-of-management-and-budget/ (last visited Mar. 4, 2025).

[37] *Musk & Ramaswamy*, n. 18, *supra*.

[38] *Id.*

84.     A primary focus for Defendant DOGE's defunding recommendations will be the estimated "1,200+ programs that are no longer authorized but still receive appropriations" totaling more than $516 billion.[39]

85.     Such programs, to which Congress allocates money regularly, implicitly authorizing them, provide health care for veterans, the largest such program; funding for drug research and development; opioid addiction treatment; and resources for education, the National Aeronautics and Space Administration, the Federal Aviation Administration; HIV/AIDS; and tuberculosis and malaria treatment and research, among other things.[40]

86.     Defendant DOGE has already begun the work of identifying programs, services, and regulations it will recommend cutting.[41]

87.     Through its social media account on X, Defendant DOGE stated it "is undergoing a serious analysis of wasteful and burdensome regulations" and called for public feedback, including "the CFR provision, the relevant text of the regulation, and the adverse consequences of said regulation."[42]

88.     Working from a report published by a conservative advocacy organization, the Wisconsin Institute for Law and Liberty, the members of Defendant DOGE are scrutinizing

---

[39] Vivek Ramaswamy (@VivekGRamaswamy), X (Nov. 13, 2024, 1:19 PM ET),
https://x.com/VivekGRamaswamy/status/1856763732363546813 (last visited Mar. 4, 2025).
[40] *See* Jacob Bogage, *10 Programs That Could Be on the 'Government Efficiency' Chopping Block*, Wash. Post (Nov. 16, 2024), https://www.washingtonpost.com/business/2024/11/16/trump-musk-ramaswamy-doge-program/ (last visited Mar. 4, 2025).
[41] *See* Thomas, et al., *supra* n. 4 ("Some of DOGE's early work has involved reviewing past audits of federal agencies, to help guide the work and identify potential cuts and inefficiencies.").
[42] See Department of Government Efficiency (@DOGE), X (Dec. 1, 2024, 1:00 AM ET),
https://x.com/DOGE/status/1867087144424182178 (last visited Mar. 4, 2025).

programs viewed as promoting diversity, equity, and inclusion ("DEI")[43]; The programs being examined provide support for small businesses, farmers, veterans, and more.[44]

89.    DOGE has made clear that eliminating federal initiatives aimed at addressing racism will be a constant in its work and it has already called out scientific studies funded by the National Institutes of Health ("NIH") as examples of the programs it will target.[45]

90.    Defendant DOGE's leader, Defendant Musk, has also identified the Consumer Financial Protection Bureau as an area of federal government to "delete,"[46] despite the fact that it has saved American consumers billions of dollars. Ramaswamy likewise stated that the incoming administration should nullify a CFPB rule limiting overdraft fees and limit the power of the agency across the board.[47]

91.    Defendant DOGE's members are not only speaking to each other about these ideas and recommendations, they have also begun meeting with "staffers at more than a dozen federal agencies," including "the Treasury Department, the Internal Revenue Service and the departments of Homeland Security, Veterans Affairs, and Health and Human Services.".[48]

**C.    Defendant DOGE lacks a fair balance of relevant viewpoints among its members, who have substantial personal financial conflicts of interest.**

92.    Despite Defendant DOGE's sweeping mandate, which implicates a wide range of issue areas, programs, and services in which Plaintiffs have a direct interest, Defendant DOGE's

---

[43] See Jacob Bogage & Faiz Siddiqui, *Musk's DOGE Weighs Recommendations to Cut Federal Diversity Programs*, Wash. Post (Jan. 16, 2025), https://www.washingtonpost.com/business/2025/01/16/musk-ramaswamy-diversity-doge-dei/ (last visited Mar. 5, 2025).
[44] *Id*.
[45] See Department of Government Efficiency (@DOGE), X (Nov. 30, 2024, 10:42 AM ET), https://x.com/DOGE/status/1862884929954017308 (last visited Mar. 5, 2025).
[46] Elon Musk (@elonmusk), X (Nov. 27, 2024, 12:35 AM ET), https://x.com/elonmusk/status/1861644897490751865 (last visited Mar. 5, 2025).
[47] Ayelet Sheffey, *DOGE Doubles Down on Eliminating the Government Agency That's Cracking Down on Overdraft Fees*, Bus. Insider (Dec. 26, 2024), https://www.businessinsider.com/doge-delete-cfpb-elon-musk-vivek-ramaswamy-overdraft-fees-trump-2024-12 (last visited Mar. 5, 2025).
[48] *Siddiqui*, et al., n. 5, *supra*.

membership does not include anyone who brings the perspective of the people and communities that will be most directly affected by the drastic cuts to the federal programs and services that Defendant DOGE will recommend.

93.    For instance, although Ramaswamy previously declared "[h]ealthcare [to be] a critical frontier for Defendant DOGE,"[49] and Defendant DOGE has already begun scrutinizing NIH research funding decisions viewed as supporting DEI,[50] it does not have any members with a background or focus on public health or patient safety; Those with a background in healthcare, like Brad Smith, bring a business perspective on healthcare and health systems; That focus on profitability may, in some cases, complement public health goals, though not always.

94.    Ramaswamy also saw reducing federal support for and oversight of public education to be the "key solution to our federal deficit problem"[51] and Defendant Musk has argued that efforts to promote diversity, equity, and inclusion in public education—concerns he derides as "the woke mind virus"—is to blame for flagging test scores[52]; Yet, as publicly reported, Defendant DOGE does not include any educators or advocates for students, such as members of Plaintiff CAT.

95.    The quantity of federal spending Defendant DOGE hopes to eliminate also implicates the interests of veterans because the proposed cuts will be impossible to implement without adversely affecting the quality of healthcare offered to veterans. Similarly, recommending eliminating 75 percent of the federal workforce, as Defendant DOGE has promised to do, will have

---

[49] Vivek Ramaswamy (VivekGRamaswamy), X.com (Nov. 23, 2024, 3:44 PM), https://x.com/VivekGRamaswamy/status/1860469404603154707 (last visited Mar. 5, 2025).
[50] See Department of Government Efficiency (@DOGE), X.com (Nov. 30, 2024, 7:42 AM), https://x.com/DOGE/status/1862884929954017308 (last visited Mar. 5, 2025).
[51] Bianca Quilantan, *DOGE vs. the Education Department*, Politico (Jan. 6, 2025), https://www.politico.com/newsletters/weekly-education/2025/01/06/doge-vs-the-education-department-00196523 (last visited Mar. 5, 2025).
[52] *Id.*

a staggering effect on employment rates for veterans, which constitute nearly 30 percent of the federal workforce;[53] Yet, Defendant DOGE does not include a single veteran's group, like members of Plaintiff CAT.

96.      Likewise, the drastic cuts Defendant DOGE has forecasted will greatly diminish the federal government's ability to provide proper oversight of the automotive industry and diligently investigate, document, and address issues that threaten the safety of drivers, passengers, and pedestrians; Federal automotive regulators, like DOT and NHTSA, are struggling to carry out their full mission under current funding levels and their work will only get harder as they adapt to sweeping technological changes in the industry, such as autonomous vehicles. Substantial cuts to their funding or legal authority will deal a crushing blow to their ability to function with the end result being greater risk to those on the road.

97.      Despite these pressing challenges, Defendant DOGE does not include anyone who brings a consumer and safety-oriented perspective to automotive safety, as Plaintiff CAT does, to balance the perspective of Defendant Musk, whose car company, *Tesla*, is currently being investigated by NHTSA to determine if its self-driving software has safety issues.[54]

98.      Nor does Defendant DOGE include representative voices from civil society, like CREW, who have long shared Defendant DOGE's stated mission of promoting government efficiency and shining a light on genuine waste, fraud, and abuse; Defendant DOGE's proposed cuts will undermine those goals; They will exacerbate the already-substantial delays FOIA requesters experience in obtaining federal records, thwarting a critical mechanism for government

---

[53] Press Release, *Nat'l Fed'n of Fed. Emps., So-called Department of Government Efficiency Would be Responsible for Nearly 500,000 Veteran Layoffs if Musk and Ramaswamy Execute Stated Plans* (Nov. 20, 2024), https://nffe.org/press-release/so-called-department-of-government-efficiency-would-be-responsible-for-nearly-500000-veteran-layoffs-if-musk-and-ramaswamy-execute-stated-plans/ (last visited Mar. 5, 2025).

[54] Max Hauptman, *Full Self-Driving Software in 2.4 Million Tesla Vehicles Faces Probe by Federal Agency*, USA Today (Oct. 18, 2024), https://www.usatoday.com/story/money/cars/2024/10/18/tesla-full-self-driving-software-nhtsa-investigation/75730547007/ (last visited Mar. 5, 2025).

transparency and accountability; There already exists serious conflicts of interests concerns posed by Defendant DOGE business owners wielding outsized influence over and unfettered access to the agencies that regulate them; There also already exists serious conflicts of interests concerns regarding Defendant Musk and Defendant DOGE and his many business ownerships and Government assistance received by those businesses (*See* ¶ 94, *infra*) – Defendant Musk addressed his own potential conflicts of interests in a statement given from the Oval Office on February 11, 2025, more fully discussed, *infra*.

99.    These glaring omissions in the viewpoints represented by Defendant DOGE's current membership are hardly surprising, given that Defendants undertook no outreach to ensure that Defendant DOGE would have the benefit of a membership with a fairly balanced set of viewpoints.

100.    Indeed, the extent of Defendant DOGE's apparent outreach to interested participants has been its calls for "super high-IQ small-government revolutionaries willing to work 80+ hours per week on unglorious cost-cutting," and individuals with "exceptional ability" in software and informational security engineering, to apply for employment with Defendant DOGE by sending a direct message to its X account.[55]

101.    On information and belief, there have been no publicly announced opportunities for those interested in serving as a *member* of Defendant DOGE to apply; The only members are Defendant Trump's allies and donors that he has announced or that have been reported.

102.    Nevertheless, members of Plaintiff CAT have taken proactive steps to indicate their willingness to participate in Defendant DOGE's work and to provide their perspectives on government efficiency, which are currently unrepresented.

---

[55] *See* Department of Government Efficiency (@DOGE), X (Nov. 14, 2024, 10:03 AM.

103.    Others, like the Citizens for Responsibility and Ethics in Washington (CREW),[56] in a letter dated January 14, 2025, CREW urged Defendant DOGE to include groups representing the broad array of stakeholders, like Plaintiff CAT, who will be directly affected by Defendant DOGE's work and Defendant DOGE failed to respond[57].

104.    Likewise, VoteVets Action Fund (VoteVets)[58] attempted to contact Defendant DOGE by sending a direct message to its official X account to request an opportunity for VoteVets Senior Advisor Major General (ret.) Paul Eaton to participate as a member of Defendant DOGE in order to represent the interests and provide the perspective of America's veterans. Defendant DOGE failed to respond.

105.    These efforts were likely taken in vain, unfortunately. In response to similar requests to participate in Defendant DOGE's work made by non-partisan, non-profit organizations, Mrs. Miller, a spokesperson for the Trump-Vance transition and Defendant DOGE member, indicated that participation in Defendant DOGE is closed, at least to anyone who might express disagreement with Defendant DOGE's premise or the Trump-Vance Administration's policy preferences.[59]

106.    Plaintiff CAT has not "shouted" their willingness to participate as a member of Defendant DOGE into the void also have an interest in their viewpoints being represented, even if that representation comes through another individual or organization.

---

[56] A Washington, D.C. non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring ethics, transparency, and integrity in government.

[57] To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FACA, the Freedom of Information Act ("FOIA"), and other federal laws, and widely disseminates those records to the public.

[58] A Washington, D.C. non-partisan, non-profit organization incorporated under the laws of the District of Columbia.

[59] *See* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, N.Y. Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html ("President Trump's Truth made clear we have no room in our administration for Democrats.") (last visited Mar. 5, 2025).

107.    Defendants have also failed to provide assurances that Defendant DOGE's advice and recommendations will be the product of the independent judgment of its members, as opposed to undue influence from Defendant Trump and Defendant Musk or the members' respective special interests.

108.    For instance, on information and belief, Defendants have taken no steps to insulate Defendant DOGE's recommendations from the personal financial conflicts of its members, including the staggering conflicts of Defendant Musk, whose "companies were promised $3 billion across nearly 100 different contracts last year with 17 federal agencies."[60]

**D.    Defendant DOGE lacks a fair balance of relevant viewpoints among its members, who have substantial personal financial conflicts of interest.**

109.    While Defendant DOGE is already operational, Defendants have taken no action to comply with FACA, including by making a formal determination that Defendant DOGE's creation serves the public interest, nor have they filed a charter identifying the scope of Defendant DOGE's work.

110.    Public reporting indicates that Defendant DOGE's members are communicating about Defendant DOGE's work using the ephemeral messaging application Signal,[61] which is widely used for its auto-delete functionality.[62]

111.    Defendant Musk has, in his personal capacity, previously used the auto-delete functionality of Signal, even in settings where he appears to have had a legal obligation to preserve those messages.[63]

---

[60] *See* Eric Lipton, et al., *U.S. Agencies Fund and Fight With Elon Musk. A Trump Presidency Could Give Him Power Over Them*, N.Y. Times (Oct. 21, 2024), https://www.nytimes.com/2024/10/20/us/politics/elon-musk-federal-agencies-contracts.html (last visited Mar. 5, 2025).

[61] *Schleifer & Ngo*, n. 6, *supra*.

[62] *Set and Manage Disappearing Messages*, n. 7, *supra*.

[63] *See* Kevin T. Dugan, *Elon Musk Got Caught Deleting Messages—and 3 Other Takeaways From His Latest Court Hearing*, Intelligencer (Sept. 29, 2022), https://nymag.com/intelligencer/2022/09/elon-musk-caught-deleting-messages-about-the-twitter-deal.html (last visited Mar. 5, 2025).

112.    Defendant DOGE's records, including those existing on Signal, provide the public with critical information about who is influencing Defendant DOGE's recommendations to Defendant Trump's administration, what viewpoints and communities are being excluded, and why the "advisory committee performs a necessary function not already being performed." *See* 5 U.S.C. § 1004(a).

113.    There have been no public assurances that Defendant DOGE's records, including those existing on Signal, will be made available to the public.

114.    In fact, Plaintiff CAT sent a Freedom of Information Act (FOIA) request to Defendant OMB[64] by U.S. PRIORITY FLAT RATE MAIL with tracking number 9114 9023 0722 4272 4440 61 requesting the following:

    (a)    Documents Relating to the President's Executive Order of January 20,2025 Implementing "the President's DOGE agenda" *(a copy is enclosed for your convenience)*;

    (b)    All documents referring to or relating to the "President's 18-month DOGE agenda" as mentioned in and referred to in Section 3 of the Executive Order of January 20, 2025 Implementing "the President's DOGE agenda";

    (c)    All documents referring to or relating to the proposed budget for implementing and effectuating the "President's 18-month DOGE agenda" as mentioned in and referred to in Section 3 of the Executive Order of January 20, 2025 Implementing the President's DOGE agenda";

---

[64] Although Defendant DOGE had been created and operating by February 3, 2025, Defendant DOGE had <u>no</u> public address at all, much less a public address for sending in FOIA requests to. Regardless, Defendant OMB should be in possession of the documents requested in Plaintiff CAT's FOIA requests.

     (d)     All documents referring to or relating to the proposed salary and/or monetary payments to Elon Musk, as Agency Head of the Department of Government Efficiency; and

     (e)     A documented list of powers, duties, directives and any limitations placed on Elon Musk, as Agency Head of the Department of Government Efficiency.

(*See* Plaintiff's Exhibit 4 *attached hereto*).

115.    In tracking the United States Postal Service number 9114 9023 0722 4272 4440 61 containing the aforementioned FOIA request letter sent to Defendant OMB it was confirmed that Plaintiff CAT's FOIA request letter sent to Defendant OMB was received by the Defendant OMB on February 13, 2025; as of the date of this filing, Plaintiff CAT has not received a response to Plaintiff CAT's FOIA request letter from Defendant OMB[65]. (*See* Plaintiff's Exhibit 5 *attached hereto*).

116.    For each of their distinct areas of focus, Plaintiff CAT has a clear interest in understanding which issues and sources of information Defendant DOGE is considering and what recommendations this influential advisory body will make to the Trump-Vance Administration.

117.    Defendant DOGE's continued use of the ephemeral messaging application Signal to communicate exacerbates Plaintiff CAT's injuries by irreparably depriving them of government

---

[65] In accordance with 5 U.S.C. § 552(a)(6)(A)(i)-(iii), Defendant OMB has "20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request (March 13, 2025) whether to comply with such request and shall immediately notify the person making such request (Plaintiff CAT) of such determination and the reasons therefor; the right of such person (Plaintiff CAT) to seek assistance from the FOIA Public Liaison of the agency; and in the case of an adverse determination— the right of such person (Plaintiff CAT) to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination; and the right of such person (Plaintiff CAT) to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services; and make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal..."

records to which they are entitled under FACA, which impedes their ability to carry out its respective missions as citizens of the United States.

118.    Defendant DOGE's unnecessary and unjustified creation, lack of transparency, lack of viewpoint diversity, and failure to prevent inappropriate influence by special interests, as well as Defendants' failure to file a charter before Defendant DOGE began its work, are violations that strike the heart of FACA.

119.    While skirting FACA's requirements, Defendant DOGE is moving quickly to deliver recommendations to the Trump-Vance Administration and also firing government employees at will and without cause for termination.

120.    Defendant Trump has instructed Defendant DOGE to conclude its work by July 4, 2026 but Defendant DOGE will provide recommendations well before then; According to Ramaswamy, Defendant DOGE would be advising federal agencies and providing recommendations "on a real time basis,[66] "starting in Jan[uary]."[67]

---

[66] Vivek Ramaswamy (@VivekGRamaswamy), X (Nov. 17, 2024, 11:11 AM ET),
https://x.com/VivekGRamaswamy/status/1858181075421303134 (last visited Mar. 5, 2025).
[67] See Vivek Ramaswamy (@VivekGRamaswamy), X (Dec. 2, 2024, 8:59 PM ET),
https://x.com/VivekGRamaswamy/status/1863764934514938118 (last visited Mar. 5, 2025).

**E.   Defendant Trump announced that he hired Defendant Musk to work with Defendant DOGE as a special Government employee; however, Defendant is actually, in fact, and holding out to the public, as the "Agency Head" (the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director, unless otherwise specified in this order) of Defendant DOGE as defined in Section 2(b) of Executive Order 14210 signed on February 11, 2025 and published on February 14, 2025[68] (*See* ¶ 26, *supra*) and Defendant Musk should lose the designation of special Government employee as declared by Defendant Trump, release Defendant Musk's financial disclosures to the public that Defendant Trump had previously ordered that Defendant Musk's financial disclosures would be confidential and withheld from the public and Defendant Musk must go through the same process as any other government employee and complete the same financial disclosure forms with Defendant ordered to go through the hiring process as any other government employee, and complete and submit the same financial disclosure forms to Defendant OGE as any other government employ.**

121.   Defendant Trump and the White House announced, declared and made Defendant

Musk, Head of Defendant DOGE, a SGE[69].

122.   A special Government employee is defined in  18 U.S.C. § 202(a):

"For the purpose of sections 203, 205, 207, 208, and 209 of this title the term "special Government employee" shall mean an officer or employee of the executive or legislative branch of the United States Government, of any independent agency of the United States or of the District of Columbia, who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis, a part-time United States commissioner, a part-time United States magistrate judge, or, regardless of the number of days of appointment, an independent counsel appointed under chapter 40 of title 28 and any person appointed by that independent counsel under section 594(c) of title 28. Notwithstanding the next preceding sentence, every person serving as a part-time local representative of a Member of Congress in the Member's home district or State shall be classified as a special Government employee. Notwithstanding section 29(c) and (d) ill of the Act of August 10, 1956 (70A Stat. 632; 5 U.S.C. 30r(c) and (d)), a Reserve officer of the Armed Forces, or an officer of the National Guard of the United States, unless otherwise an officer or employee of the United States, shall be classified as a special Government

---

[68] See Exec. Order No. 14210; 2025-02762 (90 Fed. Reg. 9669).

[69] Katherine Doyle, *White House says Elon Musk is serving as a 'special government employee'*, NBC News (Mar. 3, 2025, 3:48 PM CST) https://www.nbcnews.com/politics/donald-trump/white-house-says-elon-musk-serving-special-government-employee-rcna190520 (last visited Mar. 11, 2025); Francesca Chambers, *Trump makes DOGE head Elon Musk a 'special government employee' amid accusations of a takeover*, USA Today (Mar. 3, 2025, 1:34 p.m. ET); Joe Hernandez, *Trump hired Musk as a 'special government employee.' Here's what that means*, npr (Feb. 13, 2025, 3:00 AM MST).

employee while on active duty solely for training. A Reserve officer of the Armed Forces or an officer of the National Guard of the United States who is voluntarily serving a period of extended active duty in excess of one hundred and thirty days shall be classified as an officer of the United States within the meaning of section 203 and sections 205 through 209 and 218. A Reserve officer of the Armed Forces or an officer of the National Guard of the United States who is serving involuntarily shall be classified as a special Government employee. The terms "officer or employee" and "special Government employee" as used in sections 203, 205, 207 through 209, and 218, shall not include enlisted members of the Armed Forces."

*See* 18 U.S.C. § 202(a).

123.    Defendant Musk's educational background consists of the following[70]:

| Level | Institution | Years | Degree |
|-------|-------------|-------|--------|
| High School | Pretoria Boys High School | Until 1989 | N/A |
| University (Initial) | Queen's University, Ontario | 1989-1992 | Physics & Economics[71] |
| University (Complete) | University of Pennsylvania | 1992-1997 | B.S. in Physics, B.A. in Economics[72] |
| Graduate | Stanford University | 1995 | Ph.D. in Applied Physics[73] |

124.    Defendant Musk does not have a degree or any specialized training in Accounting:

(a)    Defendant Musk does not have a degree or any specialized training in Accounting Information Systems (AIS);

---

[70] Garfield Connor, *What College Degree Does Elon Musk Have?*, Coursmos (November 12, 2024) https://www.coursmos.com/elon-musk-college-degree/ (last visited Mar. 10, 2025).

[71] *Id*. (Defendant Musk attended Queen's University in Canada for 2 years, majoring in Physics & Economics, not earning any degrees before transferring to the University of Pennsylvania).

[72] *Id*. (Defendant Musk received a B.S. in Physics and a B.A. in Economics in 1997 from the University of Pennsylvania).

[73] *Id*. (Two days after starting the Stanford University Ph.D. program, Defendant Musk dropped out to join the internet revolution, although his application to Netscape went unanswered.

    (b)    Defendant Musk does not have a degree or any specialized training in Forensic Accounting;

    (c)    Defendant Musk does not have a degree or any specialized training in Managerial Accounting;

    (d)    Defendant Musk does not have a degree or any specialized training in Managerial Accounting;

    (e)    Defendant Musk does not have a degree or any specialized training in Business Administration in Accounting.

125.    Defendant Musk also does not have a degree or any specialized training in Statistics:

    (a)    Defendant Musk does not have a degree or any specialized training in Applied Statistics;

    (b)    Defendant Musk does not have a degree or any specialized training in Biostatistics;

    (c)    Defendant Musk does not have a degree or any specialized training in Business Statistics;

    (d)    Defendant Musk does not have a degree or any specialized training in Actuarial Science;

    (e)    Defendant Musk does not have a degree or any specialized training in Data Science.

126.    Lastly, Defendant Musk does not have a degree or any specialized training in Mathematics.

127.   Defendant Musk's clear lack of education in the areas of Accounting, Statistics and Mathematics show that Defendant Musk is simply not qualified to manage budget cuts of our hundreds of agencies and departments of our Federal Government and to assure that agencies and departments, subject to any cuts, will still be able to operate effectively and efficiently.

128.   Defendant Musk has and is more likely to harm the members of Plaintiff CAT and citizens across the United States.

129.   Defendant Trump declared Defendant Musk as the Head of Defendant DOGE, then declared Defendant Musk a "special Government employee."

130.   There is serious doubt as to whether Defendant Trump could read the statute, 18 U.S.C. § 202(a), defining the meaning of special Government employee, much less, understand it.

131.   A head of any Federal department or agency does not work a limited number of hours and is not a special Government employee.

### February 11, 2025 - Defendant Musk and Defendant Trump's Speech/Conference in the Oval Office of the White House

132.   On February 11, 2025, in the Oval Office of the White House, Defendant Trump and Defendant Musk held an impromptu speech/conference regarding Defendant Musk and Defendant DOGE's alleged work in the weeks leading up to the conference on February 11, 2025, followed by several questions from reporter; The Conference and reporter questions were audio-visually recorded. (*See* Plaintiff's Exhibit 6 *attached hereto in MP4 electronic format*).

133.   On February 12, 2025, The Singju Post released a full (*unofficial*) transcript of the Defendant Musk and Defendant Trump speech/conference regarding Defendant Musk and Defendant DOGE's alleged work in the weeks leading up to the conference on February 11, 2025. (*See* Plaintiff's Exhibit 6a *attached hereto*).

134.    Finally, a screenshot of the speech/conference shows Defendant Musk standing, wearing a black coat, baseball cap and not wearing a tie or suit (Brian Glenn, Defendant Trump's personal media friend was present at this speech/conference, but did not ask Defendant Musk, ""Why don't you wear a suit? You're in the highest level of this country's office, and you refuse to wear a suit?") while Defendant Trump is sitting at the Oval Office desk. (*See* Plaintiff's Exhibit 6b *attached hereto*).

### February 20, 2025 - Defendant Musk Presented With a Large Chainsaw on Stage at Annual Conservative Political Action Conference (CPAC)

135.    On February 20, 2025, the annual Conservative Political Action Conference (CPAC) was held at the Gaylord National Resort & Convention Center at National Harbor in Oxon Hill, Maryland, just outside of Washington, D.C.

136.    Defendant Musk was invited to and did come on stage at the CPAC on February 20, 2025.

137.    The Host of the CPAC called for Defendant Musk to come out on the stage.

138.    Defendant Musk came onto the stage in his usual attire consisting of his black coat and baseball cap; however, Defendant Musk added a thick gold chain around his neck and dark sunglasses doing a terrible impersonation of Run, D.M.C. or Jam Master Jay.

139.    After Defendant Musk came to the front of the stage with the host, the following exchange and events occurred:

"HOST: We've got one more surprise, it case this wasn't enough. I'm gonna let Elon do it... Who else is here?
ELON MUSK: Uh, well President Milei has a gift for me.
HOST: Javier Milei from Argentina; you guys know who that is, right?
*Host and Elon Musk look around the stage...*
HOST: Why don't we bring him out?
*President Milei comes on the stage from the back to the front carrying a large red chainsaw and hands it to Elon Musk...*
ELON MUSK: Thank you.

*Elon Musk holds the chainsaw up in the air and screams... Elon Musk, then holding the chainsaw, says...*
ELON MUSK: This is the chainsaw for bureaucracy!
*Elon Musk holds the chainsaw up above his head and shakes it*."

Defendant Musk's appearance at the CPAC was audio-visually recorded.

(*See* Plaintiff's Exhibit 7 *attached hereto in MP4 electronic format*).

140.    A screenshot was taken of Defendant Musk picturing Defendant Musk holding the chainsaw up in the air over his head. (*See* Plaintiff's Exhibit 7b *attached hereto*).

**F.    Defendant Musk and Defendant DOGE are admittedly canceling Government contracts, leases and grants[74]; Defendant Trump has been offering buyouts to full-time federal employees that would cover <u>8 months</u> of the employee's salary[75]; Defendant DOGE is planning to cut VA (Veterans Affairs)**

141.    NBC News reviewed documents identifying 200 of the contracts scheduled for cancellation, some of the contracts are VA contracts that may harm veterans' care.[76]

142.    Employees state that Defendant DOGE's plan to cut VA (Veterans Affairs) would harm Veterans' care.[77]

143.    Defendant Musk, Defendant DOGE and Defendant Trump, in canceling Government contracts, leases and grants and offering buyouts to full-time federal employees that would over 8 months of the employee's salary violates the Separation of Powers of the United States Constitution.

144.    Defendant Musk, Defendant DOGE and Defendant Trump are part of the executive branch of our Government.

[74] Department of Government Efficiency, <u>Savings</u>, https://doge.gov/savings (last visited Mar. 11, 2025).
[75] Bryan Witte, *What to know about Trump's buyout proposal for federal employees*, Associated Press (January 29, 2025, Updated 1:22 PM CDT) https://apnews.com/article/trump-buyout-offer-federal-workers-doge-bdb6cd89e383ff1120eeb262904b4060 (last visited Mar. 11, 2025).
[76] Gretchen Morgenson and Laura Strickler, *DOGE plans to cut VA contracts may harm veterans' care, employees say*, NBC News (March 6, 2025 6:08 AM CST, Updated March 6, 2025 9:42 PM CST) https://www.nbcnews.com/politics/doge/doge-plans-cut-va-contracts-may-harm-veterans-care-employees-say-rcna191448 (last visited Mar. 11, 2025).
[77] *Id.*

43

145.    The "power of the purse" in the federal government of the United States is vested in the Congress as set forth in the Constitution of the United States, Article I, Section 9, Clause 7 and Article I, Section 8, Clause 1.

146.    Article I, Section 9, Clause 7 of the United States Constitution states:

"No money shall be drawn from the treasury, but in consequence of appropriations made by law; and a regular statement and account of receipts and expenditures of all public money shall be published from time to time."

U.S. CONST. art. I, § 9, cl. 7.

147.    Article I, Section 8, Clause 1 of the United States Constitution states:

"The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States;"

U.S. CONST. art. I, § 8, cl. 1.

## PRELIMINARY INJUCTION

148.    To stop these violations of FACA that are now ongoing because of the illegally operating of Defendant DOGE providing recommendations on cutting important government programs and services affecting the people and communities and the members of Plaintiff CAT, Plaintiff CAT respectfully seeks the following relief from this Honorable Court:

(a)    an Order enjoining Defendant DOGE from continuing its work until it is brought in complete compliance with FACA;

(b)    an Order compelling Defendant DOGE to release all of Defendant DOGE's records to the public, except those records that shall be redacted and withheld by law; an order compelling Defendant DOGE to cite the applicable law that applies to any record withheld; and

(c)    an Order barring Defendants from accepting or acting upon the advice and recommendations of Defendant DOGE, made based on work conducted while it is not in compliance with FACA.

**COUNT ONE**

**Administrative Procedure Act, 5 U.S.C. § 706**

**Violation of Federal Advisory Committee Act:**
**Unlawful Establishment and Utilization of a Federal Advisory Committee**

149.    Plaintiff CAT repeats and incorporates by reference each and every foregoing allegation as if fully set forth herein.

150.    Defendant DOGE is an advisory committee within the meaning of FACA because it is "a committee, board, commission, council, conference, panel, task force, or other similar group" that has been "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." *See* 5 U.S.C. § 1001(2)(A).

151.    FACA requires that certain findings and certifications are made and steps are taken before an agency may create an advisory committee; Defendants failed, in multiple respects, to comply with these requirements.

152.    In particular, on information and belief, Defendants have failed to consult with the Administrator of GSA, explain why Defendant DOGE is "in the public interest in connection with the performance of duties imposed on that agency by law,"[78] or determine whether "the functions" of Defendant DOGE "could be performed by one or more agencies or by an advisory committee already in existence." *See* 5 U.S.C. §§ 1004(b) and (c).

153.    Defendants have also failed to ensure that Defendant DOGE has (i) "a clearly defined purpose"; (ii) a membership that is "fairly balanced in terms of the points of view

---

[78] *See* 5 U.S.C. § 1008(a)(2).

represented and the functions to be performed by the advisory committee"; and (iii) "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." *See* 5 U.S.C. §§ 1004(b)(1)-(3)(c).

154.    Defendant DOGE's membership fails to include the perspectives of those connected to the people with the greatest stake in the services, programs, and regulatory protections it will recommend eliminating, like Plaintiff CAT. Those same members not only bring a far too narrow set of perspectives and experiences to Defendant DOGE's work but also have significant financial conflicts and political ties, which call into question their ability to be objective and not inappropriately influenced Defendant Trump or their own special interests. Defendants have failed to take affirmative steps to prevent those conflicts from influencing Defendant DOGE's advice and recommendations.

155.    Accordingly, Defendants' establishment and utilization of Defendant DOGE was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law."[79]

156.    Defendants' failure to make public its prerequisite findings and determinations regarding Defendant DOGE, or to file a charter, also constitutes agency action that was "unlawfully withheld or unreasonably delayed"..."or otherwise not in accordance with law." *See* 5 U.S.C. § 706(1) and (2).

---

[79] *See* 5 U.S.C. §§ 706(2)(A) and 706(2)(D).

157.    Defendants' failure to comply with FACA in relation to Defendant DOGE is "final agency action for which there is no other adequate remedy in a court" and Plaintiff CAT is "entitled to judicial review" of those FACA violations under the APA. *See* 5 U.S.C. § 702 and § 704.

## COUNT TWO

### Administrative Procedure Act, 5 U.S.C. § 706

### Violation of Federal Advisory Committee Act:
### Failure to Make Defendant DOGE's Records Publicly Available

158.    Plaintiff CAT repeats and incorporates by reference each and every foregoing allegation as if fully set forth herein.

159.    FACA requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist." *See* 5 U.S.C. § 1009(b).

160.    Defendant DOGE has failed to make any of its records publicly available.

161.    FACA committees must preserve substantive records in accordance with the Federal Records Act and Presidential Records Act, as applicable.[80]

162.    Public reporting indicates that DOGE's members are communicating using the ephemeral messaging application Signal,[81] which is widely used for its auto-delete functionality.[82]

163.    Defendant DOGE's use of Signal threatens to irreparably deprive Plaintiff CAT and the American public of records to which they are entitled under FACA, including critical

---

[80] See *General Records Schedule 6.2: Federal Advisory Committee Records*, Nat'l Archives (Aug. 2015), https://www.archives.gov/files/records-mgmt/grs/grs06-2.pdf (last visited Mar. 5, 2025).
[81] *Schleifer & Ngo*, n. 6, *supra*.
[82] *Set and Manage Disappearing Messages*, n. 7, *supra*.

information regarding Defendant DOGE's activities, areas of focus, and recommendations, and frustrate Plaintiff CAT to understand and educate the general public and their fellow constituents regarding federal policy developments in their areas of expertise.

164.    Defendants' failure to disclose and maintain these records in violation of FACA is an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2).

165.    Plaintiff CAT has "no other adequate remedy at a court," id. § 704, and are therefore "entitled to judicial review" of this FACA violation under the APA, id. § 702.

## COUNT THREE

## Administrative Procedure Act, 5 U.S.C. § 706

### Violation of Federal Advisory Committee Act:
### Violation of FACA: Failure to Make Defendant DOGE Fairly Balanced

166.    Plaintiff CAT repeats and incorporates by reference each and every foregoing allegation as if fully set forth herein.

167.    FACA requires that an advisory committee be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." *See* 5 U.S.C. § 1004(b)(2).

168.    Defendant DOGE is not fairly balanced because it excludes the perspectives of many people, including Plaintiff CAT's members, who have a direct stake in the services and programs Defendant DOGE will recommend eliminating and a direct interest in Defendant DOGE's stated mission.

169.    Defendant DOGE has provided the public with no formal opportunity to apply for membership, but Plaintiff CAT has nonetheless asked for representation on Defendant DOGE to no avail; The Trump-Vance Administration has conveyed that Defendant DOGE membership is

closed and will not include perspectives that do not align with those of the Trump-Vance Administration.

170.    Plaintiff CAT is directly injured by their lack of representation on Defendant DOGE and their inability to influence its recommendations on equal terms with Defendant DOGE's members.

171.    Defendants' establishment and utilization of Defendant DOGE without the fairly balanced membership required by FACA was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"[83] and "without observance of procedure required by law".[84] It is also "final agency action for which there is no other adequate remedy in a court"[85] and Plaintiff CAT is "entitled to judicial review" of those FACA violations under the APA.[86]

## COUNT FOUR

### Writ of Mandamus, 28 U.S.C. § 1361[87]

### Violation of Non-Discretionary Duties under FACA

172.    Plaintiff CAT repeats and incorporates by reference each and every foregoing allegation as if fully set forth herein.

173.    As alleged above in ¶¶ 25-26 and ¶¶ 28-44, *supra*, FACA imposes non-discretionary duties on Defendants with respect to the establishment, utilization, disclosure of records, and fair balance of federal advisory committees.

174.    As alleged above in ¶¶ 43-98, *supra*, Defendants have violated each of these non-discretionary duties under FACA.

---

[83] *See* 5 U.S.C. § 706(2)(A).
[84] *Id*; 5 U.S.C. § 706(2)(D).
[85] *Id*; 5 U.S.C. § 704.
[86] *Id*; 5 U.S.C. § 702.
[87] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 - *Action to compel an officer of the United States to perform his duty*

## COUNT FIVE

### Writ of Mandamus, 28 U.S.C. § 1361[88]

### Conspiracy to Violate 18 U.S.C. § 202 by Defendant Trump, Defendant Musk, Defendant Vought and Defendant Collins
### by Falsely Claiming Defendant Musk is a Special Government Employee

175.    Plaintiff CAT repeats and incorporates by reference each and every foregoing allegation as if fully set forth herein.

176.    Defendant Trump, Defendant Musk, Defendant Vought and Defendant Collins all know that Defendant Musk is the Head of Defendant DOGE and Defendant Trump, Defendant Musk, Defendant Vought and Defendant Collins all know that Defendant Musk does not qualify as a SGE as defined in 18 U.S.C. § 202(a).

177.    Defendant Musk has no educational background in Accounting, Statistics and Mathematics.

178.    Defendant Musk is not a part time government employee.

179.    Plaintiff CAT seeks a declaratory judgment that Defendant Musk is not a special Government employee or an order compelling all Defendants to produce all relevant documents of Defendant Musk's work and work relationship with Defendant Doge.

---

[88] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 - *Action to compel an officer of the United States to perform his duty*.

## COUNT SIX

### Writ of Mandamus, 28 U.S.C. § 1361[89]

### Conspiracy to Violate the Separation of Powers of the United States Constitution by Defendant Trump, Defendant Musk, Defendant Vought and Defendant Collins by Violating the Separation of Powers of the United States Constitution

180.    Plaintiff CAT repeats and incorporates by reference each and every foregoing allegation as if fully set forth herein.

181.    The "power of the purse" is set forth in the United States Constitution in Article I, Section 9, Clause 7, which states as follows:

> "No money shall be drawn from the treasury, but in consequence of appropriations made by law; and a regular statement and account of receipts and expenditures of all public money shall be published from time to time."

*See* U.S. CONST. art. I, § 9, cl. 7.

182.    The Defendants are all part of the Executive Branch according to the United States Constitution, beginning with the President as set forth in Article II and Article II, Section 2 the United States Constitution. *See Id*. at art. II and art. II, § 2.

183.    Defendant Trump, Defendant Musk, Defendant Vought and Defendant Collins conspired to and did violate the Separation of Powers of the United States Constitution by Defendant DOGE's plan created to cut VA (Veterans Affairs) contracts that would harm Veterans' care as it interferes with Congress' budget and Defendant Musk, Defendant DOGE and Defendant Trump, in canceling Government contracts, leases and grants and offering buyouts to full-time federal employees that would cover 8 months of the employee's salary also interferes with Congress' budget.

184.    Defendant Vought and Defendant Collins knew of these actions by Defendant Musk, Defendant DOGE and Defendant Trump, knew that these actions of Defendant Musk,

---

[89] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 - *Action to compel an officer of the United States to perform his duty*.

Defendant DOGE and Defendant Trump violated the United States Constitution and in knowing this fact, Defendant Vought and Defendant Collins permitted Defendant Musk, Defendant DOGE and Defendant Trump to take such actions.

185.    Plaintiff CAT seeks an order of mandamus returning the status quo of all contracts, leases, grants and buyouts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CAT prays that this Honorable Court:

1.    issue an injunction and/or a writ of mandamus compelling Defendants to take affirmative steps to ensure that records of DOGE remain available for public access;

2.    declare that Defendants' creation and administration of DOGE violates the APA, FACA, and FACA's implementing regulations, and that the establishment of DOGE is therefore unlawful;

3.    set aside all decisions attendant to DOGE's creation, including the appointments of individual committee members and alternate members;

4.    through the named Defendants, enjoin DOGE and any of its subdivisions from meeting, advising federal agencies, and otherwise conducting committee or subcommittee business until it becomes compliant with FACA;

5.    order Defendants to immediately release all materials prepared for DOGE or its subcommittees, and to provide a Vaughn index for such material and those withheld from production for any reason;

6.    enjoin Defendants from relying on any recommendations or advice from DOGE made based on work conducted while it is not in compliance with FACA;

7.      enter an order declaring Defendant Elon Musk a regular federal Government employee and not a special Government employee;

8.      enter an order prohibiting Defendant DOGE from cancelling any contracts or Defendant Trump or any other Defendant from offering employment contract buyouts that would affect the budget set by Congress as it violates the separation of powers of the United States Constitution;

9.      award Plaintiff CAT's their costs, attorneys' fees, and other disbursements for this action; and

10.     grant any other relief this Court deems appropriate.

Respectfully submitted,

SCHOTTEL & ASSOCIATES, P.C.

BY: s/*James W. Schottel, Jr.*
        James W. Schottel, Jr.    #51285MO
        906 Olive St., PH
        St. Louis, MO 63101
        (314) 421-0350
        (314) 421-4060 facsimile
        jwsj@schotteljustice.com

        Attorney for Plaintiff
        Citizens Against donald Trump, Inc.
