UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITIZENS AGAINST DONALD TRUMP INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-00311-SRC |
| DONALD J. TRUMP, in his official capacity as President of the United States of America et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>Memorandum and Order</u>**

Citizens Against Trump, Inc., a Missouri nonprofit corporation, sued various executive officials, agencies, and an alleged advisory committee.  Plaintiff allegedly "represents a wide range of citizens" who "challenge the creation and operation of the so-called Department of Government Efficiency" under the Federal Advisory Committee Act.  Defendants moved to dismiss.  For the reasons stated below, the Court grants Defendants' motion.

I.    **Background**

A.    **Factual background**

The Court accepts the following well-pleaded facts as true for purposes of this motion. Plaintiff states that President Trump created DOGE on November 12, 2024—even before assuming office.  *See* doc. 1 at ¶ 63.  President Trump "made clear that it would not be a formal part of government, despite its governmental-sounding name."  *Id.* at ¶ 64.  Then citing to a preinauguration-day social-media post, Plaintiff asserts that President Trump "appointed" Defendant Musk and Vivek Ramaswamy to lead DOGE.  *Id.* at ¶ 66.  Plaintiff also cites to a news article that DOGE began operating across the federal government before President Trump

assumed the presidency. *Id.* at ¶ 76. Plaintiff states that President Trump established DOGE to work together with OMB to "develop recommendations on how to dismantle, slash, and restructure" federal agencies. *Id.* at ¶ 81 (cleaned up); *see id.* at ¶¶ 83–91.

Plaintiff claims that DOGE has taken no steps to comply with the Federal Advisory Committee Act (FACA). *Id.* at ¶ 109. For one, DOGE's members clandestinely communicate over an "ephemeral messaging application Signal." *Id.* at ¶ 110. And though Plaintiff made a Freedom of Information Act request to OMB for various documents about Defendant DOGE and Defendant Musk, it has not received a response. *Id.* at ¶¶ 114–15.

Plaintiff also questions Defendant Musk's then federal-employment status as a "special government employee" under 18 U.S.C. § 202(a). *Id.* at ¶ 5. Plaintiff states that "Defendant Trump and the White House announced, declared[,] and made Defendant Musk, Head of Defendant DOGE, a [special government employee]." *Id.* at ¶ 121. The problem being: the head of a federal agency cannot be a special government employee. *Id.* at ¶ 131.

Based on these alleged facts, Plaintiff asserts three counts against: (i) President Donald J. Trump in his official capacity, (ii) Elon Musk as "agency head" of the Department of Government Efficiency (DOGE), (iii) DOGE as an advisory committee under FACA, (iv) Russel Vought in his official capacity as Director of the Office of Management and Budget (OMB), (v) OMB, (vi) Doug Collins in his official capacity as acting director of the Office of Government Ethics (OGE), and (vii) OGE. *Id*. at 1–2 (The Court cites to page numbers as assigned by CM/ECF.). First, Plaintiff claims that DOGE is an de-facto advisory committee within the meaning of FACA. *Id.* at ¶ 150. Yet DOGE hasn't complied with several of FACA's requirements for creating an advisory committee. *Id.* at ¶¶ 151–54. Second, Plaintiff claims that DOGE failed to make any of its records publicly available, *id.* at ¶ 160, as required by FACA, *id.*

at ¶¶ 159–62.  And third, Plaintiff claims that DOGE violated FACA's requirement that an advisory committee maintain a fairly balanced range of viewpoints because the Trump-Vance Administration rebuffed Plaintiff's request for representation within DOGE.  *Id.* at ¶¶ 167–70. For these three claims, Plaintiff seeks relief under the Administrative Procedure Act (APA).  *See id.* at ¶¶ 155–56, 164, 171; *see also* 5 U.S.C. § 706.

Next, Plaintiff seeks several writs of mandamus, *see* doc. 1 at ¶¶ 172–85.  S*ee* 28 U.S.C. § 1361.  Plaintiff seeks a writ to compel Defendants to comply with FACA.  Doc. 1 at ¶¶ 173– 74.  Plaintiff also seeks a writ to compel Defendants "to produce all relevant documents of Defendant Musk's work and work relationship with Defendant Doge [sic]," *id.* at ¶ 179, or in the alternative a declaratory judgment that Defendant Musk is not a "special [g]overnment employee," *id.*  Lastly, Plaintiff states that Defendants knowingly "conspired to and did violate the separation of powers implicit in the United States Constitution" by "cancelling Government contracts, leases[,] and grants," and by "offering buyouts to full-time federal employees," as this "interferes with Congress' budget."  *Id.* at ¶ 183.  Plaintiff therefore seeks a third writ of mandamus compel Defendants to return "the status quo of all contracts, leases, grants, and buyouts."  *Id.* at ¶ 185.

## B.    Procedural background

About two months after Plaintiff filed its complaint, Defendants filed their motion to dismiss on May 16, 2025.  Doc. 30.  That triggered a deadline of May 30, 2025, for Plaintiff to file any response in opposition.  *See* E.D.Mo. L.R. 4.01(B).  Plaintiff sought and received four extensions of time to file its response.  *See* docs. 31–38, 42–43.  After the third extension request, Plaintiff then filed a countermotion in opposition to Defendants' Motion to Dismiss, doc. 39, and a memorandum in support of its countermotion, doc. 40.  Plaintiff's fourth request

for additional time assured the Court that Plaintiff would file, no later than July 14, its response to Defendants' motion and a separate motion and memorandum in support. Doc. 42 at ¶¶ 11–13. In various motions for extension of time, Plaintiff's counsel—James W. Schottel, Jr.—described personal ailments and struggles necessitating, in his view, extensions of time. *See* doc. 33 at ¶ 3; doc. 42 at ¶¶ 2–9.

Ten days after Plaintiff's July 14 deadline to file a response, the Court issued its first show-cause order. Doc. 45. Plaintiff filed a near-barren response to the order, again reciting personal struggles. *See* doc. 46 at ¶¶ 2-5. The next day, Plaintiff moved the Court for leave to supplement that response. Doc. 47 at 2. In that motion, Mr. Schottel detailed similar personal struggles and referenced his criminal and civil caseload. *See id.* at ¶¶ 4–6. Notably, in both filings, Plaintiff neither requested a specific amount of time to get its response and additional motion filed nor indicated when (or if) the Court could expect Plaintiff to file those documents.

So after waiting another week for Plaintiff's response, the Court issued its second show-cause order. Doc. 48. The Court ordered Plaintiff, no later than August 15, 2025, to explain why the Court should not summarily grant Defendants' motion and dismiss this case. *Id.* The Court warned Plaintiff that "failure to comply with any part of this show-cause order may result in the Court dismissing this case without prejudice." Doc. 48 at 2. But August 15 came and went without Plaintiff's response to the Court's second show-cause order.

Instead, on August 18, Plaintiff filed a motion to convert Defendants' Motion to Dismiss into a motion for summary judgment, and to request an order permitting discovery and taxation of costs of service against Defendants. *See* docs. 50–51. Finally, after some confusion, *see* doc. 53 at 1, Defendants filed their opposition to Plaintiff's Motion to Convert. *Id.* In sum, after four

4

extensions of time, two show-cause orders, and some motion practice to boot, Plaintiff still has not filed a response to Defendants' Motion to Dismiss.

The Court notes that according to Plaintiff's filings with the Missouri Secretary of State, Plaintiff's sole counsel—Mr. Schottel—also serves as Plaintiff's sole incorporator and sole registered agent. *Missouri Business Filings*, Mo. Sec'y of State, https://bsd.sos.mo.gov/ BusinessEntity/BESearch.aspx?SearchType=0 (last visited Jan. 22, 2026) (enter "Citizens Against Trump" in "Business Name"). On October 15, the Missouri Secretary of State warned Plaintiff that its failure to file a registration report would result in administrative dissolution of Plaintiff. *Id.* And on January 8, 2026, the Missouri Secretary of State administratively dissolved Plaintiff. *Id. But see* Mo. Rev. Stat. § 355.691.2(5) (stating that a corporation's dissolution does not "abate or suspend" a pending proceeding brought by the corporation). And, despite the hardships that Mr. Schottel claimed prevented him from complying with the deadlines in this case—and perhaps, with the deadlines set by the Missouri Secretary of State—he managed to draft and file an entirely new lawsuit on behalf of the same Plaintiff. *See Citizens Against Donald Trump, Inc. v. United States Coast Guard*, 4:25-cv-01826-SRC (E.D. Mo. Dec. 16, 2025), doc. 1.

The Court could dismiss this case for failure to comply with a court order, but the Court has sufficient information to decide this case on the merits. For the reasons stated below, the Court denies Plaintiff's Motion to Convert and grants Defendants' Motion to Dismiss. Docs. 30, 50.

## II.        Plaintiff's Motion to Convert

Before addressing Defendants' Motion to Dismiss, the Court first addresses a procedural hiccup.  As noted above, instead of filing a response to Defendants' Motion to Dismiss, Plaintiff filed a motion to convert it into a motion for summary judgment.  Doc. 50.

Plaintiff argues that Defendants presented extrinsic evidence in support of their motion to dismiss when they attached a Declaration by Joshua Fisher, *see* doc. 30-2 (describing Elon Musk's then federal-employment status).  Doc. 50 at ¶¶ 6–7.  Plaintiff claims that this violates Federal Rule of Civil Procedure 12(d), which states that if a motion to dismiss presents information outside the pleadings "and [is] not excluded by the court, the motion must be treated as one for summary judgment."  And so, Plaintiff requests that the Court convert Defendants' Motion to Dismiss into a motion for summary judgment and order the start of discovery.  Doc. 51 at 2–5.  Defendants respond that the Court may either take judicial notice of Elon Musk's federal-employee status when Plaintiff initiated the lawsuit or just disregard the attached exhibit. *See* doc. 53 at 2–3.

The Court opts for the latter.  The Court has "complete discretion" to disregard "any material beyond the pleadings that [Defendants] offered in conjunction with a Rule 12(b)(6) motion."  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (citing 5A *Wright & Miller's Federal Practice and Procedure* § 1366 (2d ed. 1990)).  And because the declaration isn't necessary to decide the motion to dismiss, the Court disregards it.  The Court therefore denies Plaintiff's Motion to Convert.  Doc. 50.  The Court now turns to Defendants' Motion to Dismiss.

6

III.     **Defendants' Motion to Dismiss**

A.     **Legal standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). But if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555. Nor does a "pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement" suffice. *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 678).  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief."  *Id*.  This "context-specific task" requires the Court to "draw on its judicial experience and common sense."  *Id*.

**B.    Plaintiff fails to establish a distinct entitlement to mandamus relief**

Plaintiff seeks several writs of mandamus under 28 U.S.C. § 1361 to compel Defendants to:  (i) comply with FACA, doc. 1 at ¶¶ 173–74, (ii) "produce all relevant documents of Defendant Musk's work and work relationship with Defendant Doge [sic]," *id.* at ¶ 179, and (iii)  return "the status quo of all contracts, leases, grants[,] and buyouts," *id.* at ¶ 185.  Congress conferred original jurisdiction on district courts over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations."  *In re MidAmerican Energy Co.*, 286 F.3d 483, 486 (8th Cir. 2002).  To warrant such extraordinary relief, Plaintiff must show that:  (i) it has a "clear and indisputable right to the relief sought," (ii) the officer has "a nondiscretionary duty to honor that right" and (iii) it has "no other adequate remedy."  *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016).  Indeed, the Supreme Court cautioned that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if [Plaintiff] has exhausted all other avenues of relief."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  For the reasons stated below, because Plaintiff also seeks the

same remedy under the APA, the Court addresses its claims to compel agency action under the APA rather than under the extraordinary remedy of mandamus.

### 1.    Plaintiff cannot seek the same remedy under both the APA and 28 U.S.C. § 1361

Plaintiff can seek to compel agency action under 28 U.S.C. § 1361 or the APA, but Plaintiff cannot seek a duplicative remedy under both statutes.  The parties have not cited, nor has the Court found, Eighth Circuit precedent for this proposition.  But federal courts have come to this conclusion for the following two reasons.  *See* 33 *Wright and Miller's Federal Practice & Procedure* § 8305 (2d ed. 2025).

First, both statutes require Plaintiff to show that no other adequate remedy exists.  *See Mitchael*, 809 F.3d at 1054; *see also* 5 U.S.C. § 704 (stating that courts can only review final agency actions "for which there is no other adequate remedy in a court").  Because the APA constitutes an adequate and available remedy—and Plaintiff seeks relief under the APA— Plaintiff cannot show entitlement to the extraordinary remedy of mandamus.  *See, e.g.*, *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) ("The availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus."); *Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011) ("[Appellant] cannot satisfy the requirements for mandamus relief . . . .[Appellant] has sued under the APA, which provides an adequate remedy."); *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1111 n. 10 (10th Cir. 2023) ("When review by other means, such as under the APA, is possible, mandamus isn't available."); *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996).

Second, "the standard for undue delay under the Mandamus Act . . . is identical to the APA standard."  *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing *Norton*

*v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)); *see Mohammad v. Blinken*, 548 F. Supp. 3d 159, 164–65 (D.D.C. 2021) (quoting *Kangarloo*, 480 F. Supp. 3d at 142); *cf. Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455 (8th Cir. 2018) (holding that claims under section 706(1) of the APA should be substantively reviewed as a petition for mandamus under the All Writs Act but not deciding the issue of whether the availability of APA relief negates the availability of mandamus relief). Because Plaintiff seeks the same remedy, *i.e.*, to compel various agency action, *see* 28 U.S.C. § 1361; 5 U.S.C. § 706(1), the Court addresses all claims under section 706(1). *See Kangarloo*, 480 F. Supp. 3d at 142 (explaining that "because Plaintiffs' APA claim fails, mandamus is not available"). This Court has previously adopted this latter approach and does so here as well. *See, e.g.*, *Sotnikov v. Dep't of Homeland Sec.*, No. 4:24-cv-00902-SRC, 2025 WL 2411084, at *4–5 (E.D. Mo. Aug. 20, 2025).

### C.    Plaintiff fails to plausibly plead entitlement to relief under the APA

In addition to its requests for three writs of mandamus, *see* doc. 1 at ¶¶ 172–85, Plaintiff asserts three largely duplicative claims under the APA, *see id.* at ¶¶ 150–71; *see also* 5 U.S.C. § 706. While the APA offers Plaintiff the remedy of compelling agency action unlawfully withheld or delayed, *see* 5 U.S.C. § 706(1), the Court still must determine whether Plaintiff met its threshold burden that that the APA applies to each Defendant in this case.

The APA, by its terms, limits judicial review to "final agency action." 5 U.S.C. § 704. Thus, the Court must first determine if Plaintiff sued "agencies." *See* 5 U.S.C. § 551(1). If so, the Court then must find that the agency defendants engaged in "final agency action" reviewable by this Court. *See* 5 U.S.C. § 551(13). If Plaintiff either sued nonagencies or sued agencies that

didn't engage in a final agency action, the Court cannot "exercise [its] powers of review under the APA." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992).

### 1.    Nonagency defendants

Axiomatically, the APA applies only to agencies.  The APA broadly defines an "agency" as including "each authority of the Government of the United States."  5 U.S.C. § 551(1).  But this broad definition doesn't reach all executive officials.  For one, the President is not an "agency" under the APA.  *Franklin*, 505 U.S. at 796.  The Supreme Court explained that "[o]ut of respect for the separation of powers and the unique constitutional position of the President . . . textual silence is not enough to subject the President to the provisions of the APA." *Id.* at 800–01.  Thus, President Trump is not subject to the APA.  And so the Court dismisses Plaintiff's APA claims against President Trump for failure to state a claim upon which the Court can grant relief.

Defendants also argue that the Court should dismiss Defendant DOGE from this case, because an agency cannot also be an advisory committee.  Doc. 30-1 at 25.  But the Court need not decide the more nuanced issue of whether an agency can sometimes be an advisory committee.  *See Freedom Watch, Inc. v. Obama*, 807 F. Supp.2d 28, 33 (D.D.C. 2011) ("An entity cannot be at once both an advisory committee and an agency."); *Wolfe v. Weinberger*, 403 F. Supp. 238, 242 (D.D.C. 1975) ("An advisory committee cannot have a double identity as an agency.") (cleaned up); *but see Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 114–15 (D.D.C. 2020) ("Nothing in FACA . . . prevents a [5 U.S.C.] § 552(f)(1) agency from also being an advisory committee.").  Because even if DOGE constitutes an agency under the APA, and even if an agency can simultaneously be an advisory committee, Plaintiff hasn't plausibly pleaded any final agency action by Defendants.

2.      **Final agency action**

The APA defines "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  "For an agency action to be 'final' under the APA, the action must (1) mark the consummation of the agency's decisionmaking process, and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507, 518 (8th Cir. 2024) (citing *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (cleaned up)).

Here, an "agency's mere failure to act is not usually a final agency action triggering judicial review."  *Org. for Competitive Mkts.*, 912 F.3d at 462.  The Eighth Circuit hasn't defined the contours of when an agency's mere failure to act matures into a final agency action.  But the Court notes three situations when a failure to act may become final agency action:  (i) "if the agency affirmatively rejects a proposed course of action," (ii) "if the agency unreasonably delays in responding to a request for action," and (iii) "if the agency delays to the point until the requested action would be ineffective."  *Gordon v. Norton*, 322 F.3d 1213, 1220 (10th Cir. 2003) (cleaned up).

Here, Plaintiff fails to plausibly plead that DOGE took any final agency action.  Plaintiff merely declares that "Defendants' failure to comply with FACA in relation to Defendant DOGE is 'final agency action.'"  Doc. 1 at ¶ 157.  And Plaintiff asserts, in a conclusory manner, that Defendants' establishment of DOGE "without the fairly balanced membership required by FACA. . . . is also 'final agency action.'"  Doc. 1 at ¶ 171.  While Plaintiff points to news articles and social-media posts written before the creation of DOGE, *see* doc. 1 at ¶¶ 60–108, these statements don't plausibly allege that Defendants consummated their decision-making process to

not comply with FACA. For one, none of these statements discuss FACA or DOGE's alleged decision not to comply with FACA. And statements made before DOGE's creation cannot constitute agency action—much less final agency action. An agency, or in this case a reorganized sub-agency, cannot act until it legally exists. And Plaintiff has not pled sufficient facts—from after DOGE's reorganization by Exec. Order. No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025), which taken as true, support a plausible claim to relief. *Iqbal*, 556 at 678 (quoting *Twombly*, 550 U.S. at 570). The Court therefore grants Defendants' Motion to Dismiss Plaintiff's claims under the APA for failure to state a claim upon which the Court can grant relief.

### D.    Plaintiff fails to plausibly establish entitlement to declaratory relief

Plaintiff also seeks a declaratory judgment that "Defendant Musk is not a special Government employee," doc. 1 at ¶ 179, but rather a "regular federal Government employee," doc. 1 at 53. To show entitlement to declaratory relief, Plaintiff must establish that the claim "presents an Article III case or controversy." *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1166 (8th Cir. 2017). This requires Plaintiff to show the claim has "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* And even if Plaintiff makes such a showing, the Court may exercise its discretion not to entertain such a claim. *See Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

Here, Plaintiff has not shown, or attempted to show, entitlement to declaratory relief. And even if Plaintiff had attempted to show an entitlement to declaratory relief, the Court takes judicial notice of the fact that Defendant Musk is no longer a federal employee. Elon Musk (@elonmusk), X, *As my scheduled time as a Special Government Employee comes to an end, I*

13

*would like to thank President @realDonaldTrump for the opportunity to reduce wasteful spending.* (May 28, 2025, at 7:01 p.m. CT), https://x.com/elonmusk/status/ 1927877957852266518; C-SPAN, *White House Daily Briefing*, at 16:21–16:27 (May 29, 2025) (confirming Musk's departure from the administration); *see* Fed. R. Evid. 201. And having dismissed Plaintiff's other claims, the Court finds no immediacy that warrants declaratory relief. Therefore, the Court denies Plaintiff's claim for declaratory relief.

## IV.    Plaintiff's Countermotion

Lastly, the Court addresses Plaintiff's Countermotion to Defendants' Motion to Dismiss. *See* doc. 39. Plaintiff asks this Court to deny Defendants' Motion to Dismiss because it "failed to comply with Rule 7 and 10 of the Federal Rules of a Procedure [sic] by doing the following things that **must** be done: (1) the motion does not state with particularity the grounds for seeking the order; and (2) the motion does not state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstance." *Id.* at ¶ 14 (emphasis in original). The Court finds this argument frivolous. Motions are not pleadings. *See* Fed. R. Civ. Proc. 7. And Defendants' Motion to Dismiss states with particularity their grounds for seeking dismissal, albeit in its memorandum in support. *See* E.D.Mo. L.R. 4.01(A). Defendants' Motion to Dismiss complies with the Federal Rules of Civil Procedure and Local Rule 4.01(A).

## V.    Conclusion

The Court grants Defendants' [30] Motion to Dismiss for failure to state a claim upon which the Court can grant relief. The Court dismisses this case with prejudice. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021). A separate order of dismissal accompanies this memorandum and order. The Court denies Plaintiff's [39] Countermotion and its [50] Motion to Convert. Finally, the Court denies Plaintiff's [47] Motion to Supplement and

its request for preliminary injunctive relief, doc. 1 at ¶ 148, as moot.  The Court grants

Defendants' [49] Motion to Withdraw Counsel.

So ordered this 22nd day of January 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE